[File No. 7095]

WILLIAM H. PAYNE, suing for himself and for the use and benefit of all other persons similarly situated, Respondent, v. BOARD OF TRUSTEES OF THE TEACHERS' INSURANCE AND RETIREMENT FUND, H. W. Swenson, State Treasurer and ex officio trustee and treasurer, G. B. Nordrum, State Superintendent of Public Instruction and trustee; Gana A. Jensen, Charles A. Sevrinson, Elroy H. Schroeder, trustees, Minnie J. Nielson, secretary, Appellants.

(35 NW2d 553)

Opinion filed Dec. 18, 1948.  Rehearing denied Jan. 28, 1949

*Nels G. Johnson*, Attorney General, *P. O. Sathre* and *C. E. Brace*, Assistant Attorneys General, for appellants.
*W. H. Stutsman*, for respondent.
*George F. Shafer*, as amicus curiae.

GRIMSON, District J.  The plaintiff brings this action to determine and enforce his rights under the act providing for the teachers' insurance and retirement fund.

The law providing for such a fund was passed by the 1913 session of the legislature, Chap 251, now, as amended, Chap 15–39, NDRC 1943 and 1947 Supplement.  It became effective July 1, 1913.  It provides for such fund, its control and administration by a board of trustees.

All teachers of the public schools had the option of joining the fund and all who became teachers after January 1, 1914, were conclusively deemed members of the fund.  The teachers and some officers of the state educational institutions were later added to the membership.

The fund was made up by assessments from teachers' salaries for twenty-five years, starting with one percent. for the first eight years and two percent. for the next seventeen years.  These assessments were increased by Chapter 259, SL 1941, Sec 15–3923 NDRC 1943, and again by Chapter 166 SL 1947 Sec 15–3914, 1947 Supp NDRC 1943 and were by that section permitted to continue beyond the twenty-five years.

In addition to the funds derived from the assessments the law provided a contribution from the county tuition fund of a sum

equal to ten cents for each child of school age in each county. This was increased to twenty cents per child, Chap 259 SL 1941, and, finally, the legislature provided that the school boards should also contribute from the teachers' salary fund of the district an amount equal to the teachers' assessments, Chap 167, 1947 SL Sec 15–3917, 1947 Supp NDRC 1943.

The act then provided that any teacher after twenty-five years of service, of which eighteen years, including the last five, must be in the schools of the state who had paid his assessment for twenty-five years and met the requirements of the law was entitled to retire and receive an annuity of a sum equal to 1/50th of his or her average annual salary for the last five years of service multiplied by the whole number of years of service as teacher. This was later changed to a sum equal to the 1/50th of his average salary for the years of service multiplied by the whole number of years of service as a teacher, Chap 259 SL 1941, Sec 15–3928 NDRC 1943 and, finally to two percent. of the total earnings as salary for the years of teaching service for which assessments were paid, Chap 165 SL 1947, Sec 15–3928, 1947 Supp NDRC 1943. Teachers who have retired may resume teaching but during such time the annuity shall cease to be again resumed on subsequent retirement "at the same amount and under the same conditions." Chap 165 SL 1947, Subsection 4, 15–3928, 1947 Supp NDRC 1943. This 1947 amendment raised the minimum of the annuity from $350.00 to $600.00 and the maximum from $750.00 to $1200.00, Chap 165, 1947 SL Sec 15–3928, 1947 Supp NDRC 1943. Provision is also made in the law for an annuity to a teacher disabled after fifteen years of service, Sec 15–3927 NDRC 1943 and for the withdrawals and refunds to teachers ceasing to teach before they are eligible for retirement, Chap 168 SL 1947, Sec 15–3940, 1947 Supp NDRC 1943. The law provides for a reduction of annuities by the Board of Trustees whenever the condition of the fund makes that necessary, Sec 15–3931 NDRC 1943. The retirement age first was fifty years, later increased to fifty-five years, Chap 165 SL 1947 Supp Sec 15–3928 NDRC 1943. When a person desires to retire from active service he "shall apply in writing to the board for the annuities provided." Sec 15–3930 NDRC 1943.

There is a variety of laws establishing and maintaining similar funds for public employees in the different states. Consequently, there is a variety of authorities on the interpretation thereof, based partly on different wordings of the laws and partly on the difference in judicial concepts as to the nature of these retirement funds. Some courts hold these retirement funds to be in the nature of a pension or a gratuity which may be abolished at any time and apply to them the principles of law governing pensions. Dodge v. Board of Education, 364 Ill 547, 5 NE2d 85, affd 302 US 74, 82 L ed 57, 58 S Ct 98; Pennie v. Reis, 132 US 464, 33 L ed 426, 10 S Ct 149. Others hold the relation between the teacher and the fund to be contractual in nature and apply to it, as far as possible, the principles of law governing contracts. State ex rel. O'Neal v. Blied, 188 Wis 442, 206 NW 213. See also annotations in 54 ALR 943, 112 ALR 1009, 118 ALR 992, 137 ALR 249. It is impossible to reconcile all these decisions. We think the latter class of cases better reasoned and more sound.

In the case of Talbott v. Independent School District, 230 Iowa 949, 962, 299 NW 556, 563, 137 ALR 234, the Iowa court, after reviewing many decisions says:

"The conclusion to be deduced from all these decisions holding that allowances paid to public employees from retirement funds, in part maintained by them, is that such allowances are not pure pensions, gratuities or bounties but are given in consideration of services which were not fully recompensed when rendered. And, also, that any contribution by the state, or any subdivision of it, by way of taxation or other public money, to such retirement or disability funds, is not a donation for a private purpose, but is a proper outlay for a public purpose, which purpose is to bring about a better and more efficient service in these various departments by improving their personnel and morale, through the retention of faithful and experienced employees."

See also: Re Sanborn, 159 Wash 112, 292 P 259; Mattson v. Flynn et al. 216 Minn 354, 13 NW2d 11; Ball v. Board of Trustees of Teachers' Retirement Fund, 71 NJL 64, 58 A 111.

As to teachers' pensions the decisions of the courts are more

uniform and favorable to the theory that the payments are not donations but in the nature of added compensation for long and faithful service in the public interest.

"It is a matter of common knowledge that statutory provision has been made in many, if not in all, states for pensions or retirement funds for public school teachers. The statutes vary materially in many respects, but it seems, as has been said, that they have as their common basis not charity or benevolence, but compensation for faithful, long continued, valuable, public service. On this theory, a law providing for the payment of pensions to teachers out of the general school fund, or providing for a tax to raise such fund, is constitutional. Such an expenditure of funds is for a school purpose, and is not prohibited by a constitutional prohibition of appropriations for charitable or benevolent purposes to any person, since they are founded on service rendered to the commonwealth." 40 Am Jur 973.

This court has sustained the Teachers' Insurance and Retirement Act as constitutional. In State ex rel. Haig v. Hauge, 37 ND 583, 591, 164 NW 289, 291, LRA1918A 522, 525, this court said:

"Surely, the providing of a permanent teachers' insurance fund which shall give dignity to the profession, encourage persons to enter into it, and provide for old age, is a 'provision for the establishment and maintenance of a system of public schools.'

A tax levied for this purpose is not a donation to any person, nor is it forbidden by section 185 of Article 12 of the Constitution. . . .

It is merely in the nature of an added salary allowance to public servants. . . .   . . . they (the people) may certainly also be taxed in order to provide a fund which shall increase the efficiency of the teachers themselves, and aid and encourage them to devote their lives to a profession which, though essential to our civilization, has been but poorly encouraged, and has too often been looked upon merely as a stepping stone to other employments."

The North Dakota act as heretofore shown provides for the raising and administration of the fund. It provides further the conditions under which the teachers become eligible for annui-

ties from the fund. To become eligible the teachers must comply with the conditions of the act and teach at least twenty-five years, mainly in North Dakota. When a person becomes a teacher the law makes him a member of the fund and provides for his consent to the assessments and other provisions of the law. His teaching is a compliance therewith. The annuities are in the nature of an additional compensation. State ex rel. Haig v. Hauge (ND) supra. The relation thus established is in the nature of a contract, the terms of which are contained in the law so accepted by the teacher. Ball v. Board of Trustees of Teachers' Retirement Fund (NJ) supra. See also State ex rel. Chamberlain v. Johnstone, 65 ND 727, 262 NW 193. Among the terms accepted is the agreement to pay assessments as established from time to time, Sec 15–3910, NDRC 1943 and the consent to the reduction of the annuity by the Board if the condition of the fund so requires, Sec 15–3931, NDRC 1943. When the teacher's membership in the fund is optional he notifies the proper authorities of "his election to come within the provisions of this chapter," Sec 15–3913, NDRC 1943. A teacher upon entering the service of teaching accepts the law and by continued teaching and payment of assessments for twenty-five years performs the obligations imposed by the law. The relation thus arising is subject only to such limited modification provided for or inherent in the law as may be necessary to maintain the fund in such condition that the intent of the act to encourage persons to enter and to remain in the teaching profession may be attained. State ex rel. Holton v. Tampa, 119 Fla 556, 159 So 292, 98 ALR 501. The changes made since the law was enacted have been in accordance therewith.

The fund thus created is a trust fund held by the State Treasurer for the purposes of the act. A teacher obtains an interest in the fund to the extent of his compliance with the law. If he withdraws or dies in good standing he, or his estate, is entitled to a refund. Except to the extent that he has fully complied with the law his interest is prospective, but an interest nevertheless that has to be considered in relation to the fund. When he has taught the required number of years, made his payments, attained the stated age, fully complied with the law, his interest

becomes fixed. Klench v. Board of Pension Fund Commissioners, 79 Cal App 171, 249 P 46; Crawford v. Teachers' Retirement Fund Association, 164 Or 77; 99 P2d 729.

The facts in this case as stipulated are as follows: The plaintiff, William H. Payne, had engaged in teaching in the public schools for twenty-six years, eighteen of which, including the last five years of such service were in the public schools of North Dakota and in equivalent service of the army. He completed payments of the assessments at the end of the school year 1945–1946 but lacked one year of teaching in North Dakota. He completed such teaching service in the State about May 31, 1947; he was fifty-nine years of age. On August 27, 1947 plaintiff wrote the executive secretary of the Board from San Mateo, California as follows:

"Dear Miss Nielson:

Having completed 25 years of teaching, eighteen of which have been in North Dakota, and having completed payments of the assessments as required, I am hereby applying for retirement and request that my annuity be fixed under the provisions of Senate Bill 103 as passed by the 1947 Legislature.

Legal counsel has been consulted and I have been advised that I am qualified for retirement under this new law.

Sincerely yours,<br>William H. Payne."

Senate Bill 103 became Chap 165 SL 1947 § 15–3928, 1947 Supp, NDRC 1943. The Board refused to grant the annuity provided by that chapter on the grounds that the plaintiff had performed no teaching services after it became effective. The Board pointed out that he was entitled to the payments of annuity under the old law. Plaintiff then brought this suit to determine and enforce his claimed rights under the 1947 law. The District Court found in his favor and the Board brought this appeal.

The plaintiff bases his claim solely on the time when he requested his annuity and admits that had that request been made before July 1, 1947 when the new law came into effect he would only be entitled to payment of annuity under the old law. The

real question therefore is whether the 1947 amendment applies to him under the facts in this case.

The attorney general points out that the decision of the Board was in accord with the practical and contemporaneous construction of the statute by the officers administering it. He quotes from a statement of the executive secretary of the Board that the "administrative practice as to the beginning dates of annuities" has been that "if a person, who has met the service, financial and age requirements, retires his annuity begins as of the date he meets those requirements" and further that if "he does not make application for same until a later period his annuity begins not upon the date he makes application but upon the date he becomes eligible for the annuity." It is not disputed that this has been the administrative practice since the adoption of the law. During that time the legislature has met in many sessions and made several amendments to the law but none in regard to this procedure. There is at least a strong presumption that the legislature knew and approved the contemporaneous and practical construction placed upon the Teachers' Insurance and Retirement Act by the officers charged with its administration. Furthermore, this construction has been acquiesced in by those whose financial interests have been involved.

This court has repeatedly held that "in construing a statute of doubtful meaning the court will give weight to long-continued practical construction placed thereon by the officers charged with the duty of executing and applying the statute." State v. Equitable Life Assurance Society, 68 ND 641, 673, 282 NW 411.

"Long continued contemporaneous and practical interpretation of a statute by the executive officers charged with its administration and enforcement, the courts, and the public constitutes an invaluable aid in determining the meaning of a doubtful statute." Vol 2, Sutherland's Statutory Construction, 3rd ed 512.

"Executive construction is entitled to additional weight where it has been impliedly indorsed by the legislature, as by the reenactment of the statute or the passage of a similar one, in the same or substantially the same terms, . . . ." 59 CJ 1029.

The practical construction of a statute by those officers who under their official oath inaugurated a new system therein pro-

vided and which construction has been continually practiced for the twenty-five-year life of that statute "ought not to be shaken, but upon the ground of manifest error and cogent necessity." Musgrove v. Baltimore & O. R. Co. 111 Md 629, 75 A 245. See also: Vose v. Gray, 70 ND 727, 745, 298 NW 1; State ex rel Gammons v. Sorlie, 56 ND 650, 219 NW 105; State ex rel. Kinzer v. Hall, 50 ND 708, 197 NW 770; Ford Motor Co. v. State, 59 ND 792, 231 NW 883; O'Laughlin v. Carlson, 30 ND 213, 152 NW 675; Cohen v. Virginia (US) 6 Wheat 264, 418, 5 L ed 257, 294.

Applying the law to the facts in this case, what are the plaintiff's rights with regard to the amount of his annuity and the time when it commences? The law itself fixes the rights and obligations between the plaintiff and the defendants. In construing the law, the whole act must be considered. Harding v. Dickinson, ante, 71, 33 NW2d 626.

So considered, it is clear that the teacher is entitled to his annuity when he ceases teaching if he has met all the conditions of the law. He has then completed his work and is entitled to his pay.

The plaintiff claims, however, that the application he made to the Board on August 27, 1947, fixes the time of his retirement and that, therefore, he is entitled to the annuities provided by § 15-3928, 1947 Supp NDRC 1943 which went into effect July 1, 1947.

The plaintiff made this application heretofore quoted under § 15-3930, NDRC 1943, which reads as follows:

"*Written Application for Annuities Required.* Any person who has complied with the provisions of this chapter and who desires to retire from active service in the public schools or state institutions shall apply in writing to the board for the annuities provided in this chapter."

This section does not give the Board any authority to determine the time of retirement. That is left optional with the teacher and follows automatically when he ceases to teach. At or after that time he may apply under the above section for his annuity.

The application is not a part of the work for which the annuity is paid. It is merely the method of setting in motion the payment of the annuities under the law. It is wholly procedural. It is only a demand on the Board to fulfill its obligation. It is no more a part of the services for which the annuity is a reward than would be the bringing of a suit for payment upon full performance of a contract.

The pension payments are added compensation for service that has been rendered. Such compensation is earned by reason of the service performed and becomes payable upon compliance with the provisions of the law authorizing payment to be made. Manifestly, the amount of compensation is measured by the terms of the law in force at the time the period of service is terminated. When a teacher has fulfilled the requirements entitling him to apply for annuity payments under the law, the right to such payments is not waived or forfeited by delay in making the application. Thus, in this case under the admitted facts the plaintiff, Payne, had fulfilled the requirements and was entitled to apply for pension on May 31, 1947, and when he did make application it was predicated upon the right which came into existence on May 31, 1947, and the annuity payments are measured by the terms of the law governing such payments on that day.

The stipulated facts show that the plaintiff on the 31st day of May 1947, had fully complied with the act and fulfilled all the conditions therein. By ceasing to teach he retired. He was at that time entitled to the deferred payments, in the form of an annuity, provided by the Teachers' Insurance and Retirement Act for the services he had performed. It became the duty of the Board, as soon as requested, to determine the amount of his annuity according to the law then in force, and commence payments as of that date.

In Gaffney v. Young, 200 Iowa 1030, 205 NW 865, 867, it is held: "Upon the happening of that event, (the right of the party to receive the annuity) and the existence of other facts entitling him to the pension, it cannot be doubted that his right, so far as relates to the obligations of the custodians of the fund to pay and his right to receive the pension then provided for,

accrued and vested, and could then have been enforced. Pennie v. Reis, supra; State v. Board of Trustees, supra; Stevens v. Relief Assn. 124 Minn 381, 145 NW 35, 50 LRA NS 1018; Gibbs v. Relief Ass'n. supra; Rudolph v. United States, 36 App DC 379; O'Dea v. Cook, 176 Cal 659, 169 P 366; Dickey v. Jackson, 181 Iowa 1155, 165 NW 387."

See also: Mattson v. Flynn, supra.

It follows that the plaintiff is only entitled to receive annuities under § 15-3928 NDRC 1943 prior to its amendment by Chaps 165 and 166 SL § 15-3928, 1947 Supp. NDRC 1943. The judgment of the District Court is reversed and the case remanded for further proceedings according to law.

CHRISTIANSON, Ch. J., and NUESSLE and BURKE, JJ., concur.

MILLER, Dist. J., dissenting. The issue in this case is a matter of statutory construction.

On May 31, 1947, plaintiff had completed 26 years of teaching service, of which 18 were in North Dakota, and had paid all assessments to qualify him for a retirement annuity.

Sec 15-3927 of 1943 RC provides in part that any teacher who has complied with the provisions of this Chapter *may retire* and receive the annuity provided for in Sec 15-3928.

Sec 15-3928 provides in part that each teacher *who shall have retired* from service shall be entitled to receive as an annuity a sum equal to 1/50th of his average annual salary for the years of service for which assessments were paid, multiplied by the whole number of years of service as a teacher.

This latter section was amended by Ch 165 of the 1947 SL, effective July 1, 1947, which increased the amount of the annuities.

"Any person who has complied with the provisions of this chapter and who desires to retire from active service in the public schools or state institutions shall apply in writing to the board for the annuities provided in this chapter." Sec. 15-3930 of 1943 RC.

On August 27, 1947, plaintiff expressed his desire to retire

and applied in writing for the annuities fixed under Ch 165, supra.

Did plaintiff's retirement become effective, as a matter of law, on May 31, 1947, or on the date when he applied?

Under the foregoing statutes, plaintiff is not entitled to the annuities provided until he has complied with the provisions of the chapter and until he *"shall have retired."* On the other hand there is no time limitation thereafter as to when he *"may retire."* In fact, there is an inducement to continue in service, since years of continued service may increase the annuities.

Retirement is optional with the teacher and is not compulsory upon attaining eligibility or at any time. Teachers do not retire annually at the end of each school year, nor is there any presumption to that effect.

Under this act, such status results only when the individual teacher elects to retire and applies in writing for the benefits; never as a matter of law. Until the teacher has taken the initiative in this respect, the Board can do nothing, because it is not authorized to do so under this law and for the further reason that it would be unable to determine the amount of annuity, since that is dependent upon the term of service which would not terminate until retirement.

The majority hold that the provision for applying in writing for retirement is to notify the Board that applicant has ceased teaching and paying assessments; that it is merely procedural and merely serves notice that applicant has complied with his part of a so-called contract. The fallacy of this theory is that the element of retirement is overlooked.

The teacher must have retired before he is eligible to annuity. He cannot apply for the benefits, before retirement, although otherwise eligible, and continue teaching.

If he has retired and resumes teaching, the payments must be discontinued. Sec 15–3935 of 1943 RC.

After plaintiff attained eligibility for retirement, he had the legal right to determine when to make application. The exercise of that right cannot be defeated because he rendered no teaching service or paid any assessments provided for by the 1947 amend-

ment. This amendment does not require as a condition to retirement, subsequent to July 1, 1947, that any teacher eligible to retire prior to that date, meet any special conditions, nor does the act provide or imply that a teacher's rights in the fund, with respect to the payment of annuities, be fixed at the time he became eligible to retire.

The 1947 amendment does not limit increased annuities to teachers who became eligible to retirement subsequent to July 1, and should not be construed to exclude teachers who actually retired after July 1, 1947, though eligible for retirement before that date. To so assume would read into the act a provision not there.

It seems clear that Payne did not retire until August 27, 1947, at which time his rights in the fund became vested in accordance with the law then in effect.

The retirement act is a public purpose, is an exercise of the state taxing power and is merely in the nature of an added salary allowance to public servants. State ex rel. Haig v. Hauge, 37 ND 583, 164 NW 289, LRA1918A 522.

The law is general in its application. The assessment paid by each teacher does not determine the amount of his annuity. Until the teacher has complied with the law and until he has decided to retire, his rights in the fund are contingent or inchoate, and subject to legislative control or change by the Board. After his election to retire and his application for annuity, such rights become vested. Rights are vested when the right to their enjoyment, *present or prospective,* have become his property as a present interest. 12 CJ 955 (485); 16 CJS, Constitutional Law § 215.

The provisions of the Retirement Act, including the 1947 Amendment, are not retroactive but prospective.

"No part of this code is retroactive unless it is expressly declared to be so." Sec 1–0210 of 1943 R.C.

"It is presumed that the legislature intends a statute to operate prospectively only unless it clearly manifests a contrary intention." Murray v. Mutschelknaus, et al. 70 ND 1, 291 NW 118; Petters & Co. v. Nelson County, 68 ND 471, 281 NW 61.

Plaintiff retired August 27, 1947. The law in effect at that time was Ch 165 of the 1947 SL, and since it is not retroactive, the retirement cannot be said effective as of a prior date, as a matter of law. Certainly, plaintiff did or said nothing from which that fact might be implied. He is entitled to the benefits provided under the 1947 Amendment. The judgment of the District Court should be affirmed.