Christ WALKER, Lawrence Braun, Anton A. Kraft, Simon Dillman, Adolph Hamon, and Edward Dillman, Plaintiffs and Respondents,

v.

William WEILENMAN, Coral Gayton, Mrs. George Henderson, Lloyd Smestead, Joseph Wingerter, Philamena Wingerter, Donald Feist, Joan Feist, Peter Patima, and the Selfridge School District, and Agnes Wingerter, Defendants and Appellants.

No. 8304.

Supreme Court of North Dakota.

May 26, 1966.

Rehearing Denied July 14, 1966.

William R. Mills, Bismarck, for plaintiffs and respondents.

E. J. Rose and Milton K. Higgins, Bismarck, for defendants and appellants.

STRUTZ, Judge.

This action was commenced for the purpose of setting aside and declaring void the dissolution of Walker School District and Golden Wealth School District in Sioux County, and the annexation of these districts to Selfridge School District. The plaintiffs are citizens, electors, taxpayers, and patrons of these two school districts. The defendants are the members of the county reorganization committee of Sioux County, of which the county superintendent, Coral Gayton, is the secretary. The Selfridge School District, to which Walker and Golden Wealth school districts were ordered annexed, is also made a defendant.

The pleadings present two issues:

First, did the Sioux County reorganization committee have jurisdiction and authority to dissolve Walker School District and Golden Wealth School District and attach these districts to Selfridge School District?

Second, are the plaintiffs entitled to have Coral Gayton removed from the office of county superintendent of schools of Sioux County?

The pleadings allege, and the evidence shows, that neither Walker nor Golden Wealth school districts have operated schools within their respective districts for more than two years. At the time these dissolution proceedings were started, the law provided that when the county superintendent should notify the county reorganization committee that any school district within the county had not operated a school for the immediately preceding two years, "providing pupils from such school district are not attending school in another state," the county reorganization committee should forthwith give notice of hearing to dissolve such school district and provide for its attachment to an adjoining school district. Sec. 1, Chap. 145, S.L. of 1963.

The action to declare the order of the county reorganization committee, providing for the dissolution of the two districts and their attachment to Selfridge School District, void, was commenced in September of 1964 and tried in May of the following year. In the meantime, the 1965 Legislature had again amended the law on dissolution of school districts to provide, in part, that when any school district within the county had not operated a school for the immediately preceding two years, "providing fifty per cent of the pupils from such school district are not attending school in another state," such district shall be subject to dissolution and annexation.

It is admitted that neither Walker nor Golden Wealth school districts had operated schools within the districts for more than two years prior to the serving of the notice by the county superintendent. On August 21, 1964, the reorganization committee, by a 'majority vote, declared the two school districts dissolved and voted to annex them to Selfridge School District. The plaintiffs thereupon commenced this action to declare the purported dissolution and annexation null and void. They further demanded, in the same action, that the defendant Coral Gayton be removed from her office as county superintendent on the ground that she was not qualified to hold the office.

The trial court found that, prior to the dissolution, more than one-half of the children from Walker School District were attending school in McIntosh, South Dakota. The court thereupon ordered judgment to be entered decreeing that the Walker School District had not been legally dissolved and that the purported dissolution and annexation to the Selfridge School District were void. The court further found that, although Golden Wealth School District had been legally dissolved, it had not been legally annexed to Selfridge School District and that such annexation was void. Finally, the court found that the plaintiffs were not entitled to have the defendant Coral Gayton removed from the

office of county superintendent of schools of Sioux County. From judgment entered on such orders the defendants have appealed, demanding trial de novo.

Two issues are presented on the appeal:

First, did the county reorganization committee have authority, under applicable statutes,

a. To dissolve the two school districts; and

b. To attach them to Selfridge School District?

Second, are the plaintiffs entitled to have the defendant Coral Gayton removed from the office of county superintendent of schools?

We will discuss these issues in the order in which they are set out.

Did the reorganization committee have authority to dissolve the two school districts and attach them to Selfridge? The law providing for the dissolution of the districts under which these proceedings were had was Chapter 157 of the Session Laws of 1961. This chapter, by its provisions, became effective July 1, 1962. This law provided, among other things, that when the county superintendent of schools should notify the board of county commissioners that any school district within the county had not operated a school for the immediately preceding two years, provided pupils from such district were not attending school in another State, the county commissioners should proceed to dissolve such district. It is conceded that, when the county superintendent issued her notice, the district in question had not operated a school for more than two years. At the time the county reorganization committee, which in 1963 was substituted for the board of county commissioners in reorganization proceedings, entered its order dissolving the districts, it is conceded that "pupils" from Walker were, or had been during the previous school year, attending school outside the State. Plaintiffs contend that the statute

only required that more than one pupil from the district be attending school in another State in order to comply with the provision that such dissolution cannot be had if "pupils from the district" are attending school outside the State. The defendants, on the other hand, contend that "pupils" must be interpreted to mean all of the pupils, not just two and not even a majority, or any number less than all. Thus the interpretation of the provision "pupils from the district" becomes important in a decision as to whether Walker School District has been properly dissolved.

It is true, as pointed out by the plaintiffs, that the word "pupils" means more than one. Two are "pupils." But it cannot be seriously argued that the Legislature intended that if just two of the pupils from any district were attending school outside the State, this would stop the entire reorganization machinery. Prior to the time the county reorganization committee acted on this dissolution, the Attorney General's office of the State of North Dakota had issued its opinion on this provision. Upon proper request, the Attorney General, on January 17, 1962, issued an official opinion that, in order to come within the exception "providing pupils from such school district are not attending school in another state," the school district must be sending *all* of its pupils to schools in a foreign State.

◼ The trial court, in holding the dissolution of Walker School District void, found that the language of the statute, "providing pupils from such school district are not attending school in another state," is plain and unambiguous and cited cases of this court to the effect that, where the legislative intent is plain and clear upon its face, there is no need for judicial construction. With this holding we cannot agree. In this case, "pupils" could mean two, as contended by the plaintiffs, or it could mean all, as contended by the defendants, or it could mean any number of pupils in between. Thus the meaning is ambiguous. We believe that the Legislative Assembly did not intend that this statute be interpreted to mean "two." If that were the intention, the reorganization of the district could be prevented if just two of a large number of pupils were attending school outside the State. Since "pupils" could also mean three, five, or any number up to and including thirty in the case of Walker School District, which was the number of pupils in the district, the most reasonable interpretation would be that which was given by the Attorney General when he held that the word "pupils" in the statute, under the circumstances, meant "all" pupils.

Where a school district borders on a foreign State, and arrangements are made for "pupils" to attend school outside this State, arrangements should be made for all of them, and in the absence of specific provision by the Legislature fixing a lesser number than all, we believe the conclusion reached by the Attorney General that, to fall within the exception of this statute, a school district must be sending all of its students to school in a foreign State, was clearly reasonable and justified.

◼ The trial court held that the subsequent action of the Legislature, by amending the statute to read: "* * * providing fifty per cent of the pupils from such school district are not attending school in another state," was a legislative determination of the intent of the Legislature when it enacted the original law in 1961. With this conclusion we cannot agree. The language used in the original Act was ambiguous. "Pupils," as used in that Act, could mean two or any number more than two. The amendment of this provision in 1965, rather than being an interpretation of the law as passed in 1961, was an indication that the Legislature wanted to change the 1961 Act, or at least wanted to make it definite in meaning. As stated in Sutherland on Statutory Construction, 3d Ed., Vol. 1, Section 1930, at page 412,

"* * * the mere fact that the legislature enacts an amendment indicates that

it thereby intended to change the original act * * *."

Thus any material change in the original law is presumed to indicate a legislative intent to change the law, not to interpret what it was originally intended to provide. This would be especially true where the Legislature in 1963 had amended this very section without making any change in the wording here under consideration. Sec. 1, Chap. 145, S.L.1963. The 1963 amendment, which failed to change the wording of the section, " * * * providing pupils from such school district are not attending school in another state, * * *" gives weight to the contention that it thereby adopted the construction placed on the law by the Attorney General. Where, as here, the legislative intent is not clear and the statute is ambiguous, then the courts will consider the practical interpretation placed upon the statute. As this court said in Payne v. Board of Trustees, 76 N.D. 278, 35 N.W. 2d 553,

"In the construction of a statute the courts give weight to the practical and contemporaneous construction placed upon it by officers charged with its administration."

■ For reasons stated herein, the order of the Sioux County reorganization committee of August 21, 1964, declaring Walker School District and Golden Wealth School District dissolved, was valid.

The next question to be determined on this appeal is whether the annexation of the two districts to Selfridge School District was valid. It is conceded that the approval of the State committee was not obtained, and whether the annexation was valid or not depended on whether the approval of the State committee was required.

Section 2 of Chapter 145 of the 1963 Session Laws, amending Section 15–22–22, North Dakota Century Code, on dissolution of school districts, which was the law in effect at the time of the order of attachment, provided, among other things:

"The order shall become effective upon the adoption of the resolution, unless another effective date is provided for therein, * * *"

The same session of the Legislative Assembly enacted Chapter 147 of the 1963 Session Laws, amending Section 15–53–21, North Dakota Century Code. That chapter provides that:

"Proposals for the organization of a new school district, for the consolidation of two or more districts, or for the alteration of the boundaries of established school districts, * * * must be submitted by the county committee and county superintendent to the state committee for approval before any hearings on petitions are held by the county committee, or before final action is taken by the committee in cases where no petition is required, * * * as the law may require in each case. * * *"

The trial court held that the provisions of Chapters 145 and 147 of the 1963 Session Laws must be construed together, and it being conceded that the proposal for annexation was not submitted to the State committee for approval, the trial court held the annexation void.

■ With this holding we cannot agree. The law in force at the time of the annexation order specifically provided that such order or resolution of annexation shall become effective "upon the adoption of the resolution, unless another effective date is provided for therein." The provision requiring proposals for the organization of a new school district or for the consolidation of two or more school districts, or for the alteration of boundaries of established school districts, was not applicable to the annexation order in question. The Act of which these provisions requiring notice were a part, and of which Chapter 147 of the 1963 Session Laws was an amendment, had for its announced purpose the formation of new school districts and the alteration of the boundaries of established school districts. The purpose of the proceeding

before us was not the formation of a new school district or the alteration of the boundaries of an established district. The purpose of the proceeding was to dissolve and to annex certain school districts which were not providing school for their children.

 That the provisions of Chapter 147 of the 1963 Session Laws, requiring approval of the State committee, were not intended to apply to orders in the dissolution and annexation of a school district as of the time of this annexation, is further established by the fact that a subsequent Legislature, in 1965, amended the law on dissolutions to require that such order of dissolution and annexation "shall become effective July 1 following the date of the order or resolution *and after approval* by the state board of public school education, * * *" As heretofore stated, the fact that the Legislature enacts an amendment of an existing law is an indication that it intended to change or alter the original Act.

 We therefore hold that the annexation of Walker School District and Golden Wealth School District to the Selfridge School District was complete and became effective upon the adoption of the resolution.

The final question to be considered on this appeal is whether the plaintiffs are entitled to have Coral Gayton removed as county superintendent of schools, in this proceeding.

 The plaintiffs base their cause of action for removal on the ground that the said defendant, Coral Gayton, does not have the educational qualifications required by law to hold the office. The trial court held that the plaintiffs were not entitled to have her removed, and defendants having appealed not only from those portions of the judgment adverse to them but from the whole judgment, and having demanded trial de novo on all of the issues, we must determine whether the judgment entered by the trial court on this matter is correct.

Specific statutory provision is made for removal of public officers such as the county superintendent of schools. Sec. 44–11–01, N.D.C.C., and Chap. 32–13, N.D.C.C. Section 32–13–03 of the North Dakota Century Code provides that an action by quo warranto to test the right of a person to hold office may be brought by the State or by any person "who has a special interest in the action."

The proceeding here before this court was an action to test the validity of the dissolution and annexation of school districts, and the trial court correctly held that the question of the defendant Gayton's right to the office could not be determined in such action.

For reasons stated herein, the judgment of the district court, holding the dissolution of Walker and Golden Wealth school districts and their annexation to Selfridge School District invalid, is reversed. The judgment of the trial court holding that the plaintiffs cannot cause the removal of the defendant Gayton as county superintendent of schools, in such action, is hereby affirmed.

TEIGEN, C. J., ERICKSTAD and KNUDSON, JJ., and C. F. KELSCH, District Judge, concur.

MURRAY, J., not being a member of the Court at the time of submission of this case, did not participate.

On petition for rehearing.

STRUTZ, Judge.

The plaintiffs have filed a petition for rehearing in which they set out a number of reasons why the court should reverse its decision in this case or, in any event, should grant the plaintiffs a rehearing. Many of the plaintiffs' contentions are without any merit, and need not be discussed. However, one or two of the issues raised should be considered.

The plaintiffs state that:

"The 1963 Act specifically requires state review before final action on dissolution and annexation."

Since the order of dissolution of Walker and Golden Wealth school districts and the order of annexation of these districts to the Selfridge School District were made in 1964, and the action to declare such orders void was commenced in September of 1964, although not tried until May of 1965, the provisions of the 1963 Act would be controlling. If, therefore, the 1963 Act did require State review before action on dissolution and annexation became final, as contended for by the plaintiffs, our decision previously rendered would be erroneous.

Section 2 of Chapter 145 of the 1963 Session Laws amended Section 15–22–22, North Dakota Century Code, which provided for the dissolution of school districts and the attachment of such dissolved districts to adjoining districts. This amendment specifically provided:

"* * * The order shall become effective upon the adoption of the resolution, unless another effective date is provided for therein, * * *."

The order referred to is the order of dissolution and attachment of the dissolved school district to an adjoining school district. The language quoted is so clear and unambiguous that no further comment need be made.

But the plaintiffs contend that Chapter 147 of the 1963 Session Laws must be read and considered in conjunction with the provisions of Chapter 145; that they both were enacted by the same session of the Legislative Assembly and, in fact, they both were signed on the same day by the Governor. A reading of Section 3 of Chapter 147 of the 1963 Session Laws, however, discloses that its provisions apply to voluntary proposals for the alteration of school districts. The provisions of Chapter 145 of the 1963 Session Laws, on the other hand,

apply to dissolution and annexation of school districts when the assessed valuation of the district has been reduced to a certain level, or when any school district has not operated a school for the immediately preceding two years. The dissolution and attachment under consideration in this action was brought under the provisions of Chapter 145 of the 1963 Session Laws. Such dissolution and attachment was not voluntary on the part of the school district. The law providing for dissolution and annexation of school districts applicable in this proceeding, and which was in force at the time of the dissolution and annexation order in this case, specifically states:

"* * * The order shall become effective upon the adoption of the resolution, unless another effective date is provided for therein, * * *."

The provisions of Chapter 147 would not apply to the dissolution and annexation under consideration in this case.

That the Legislative Assembly took the same view is clear from the fact that the 1965 Legislature did amend Section 15–22–22 of the North Dakota Century Code, which had been amended by Chapter 145 of the 1963 Session Laws. The 1965 amendment provided that, in dissolution and annexation proceedings such as we have here under consideration,

"* * * The order shall become effective July first following the date of the order or resolution and after approval by the state board of public school education, * * *" [Sec. 2, Chap. 130, 1965 S.L.]

If the contention of the plaintiffs is meritorious, then the 1965 amendment would have been unnecessary, for such approval already would have been required under the provisions of Chapter 147 of the 1963 Session Laws.

The plaintiffs' further argument, that the 1965 amendment requiring approval by the State Board of Public School Education is a clear indication of what the

Legislature intended by its earlier enactment of Chapter 145 of the 1963 Session Laws, is without merit. The provisions of Chapter 145 are clear and unambiguous. That chapter specifically provides that an order of dissolution and annexation, such as we have under consideration in this case, shall become effective "upon the adoption of the resolution, unless another effective date is provided for therein," and such clear, unambiguous language is not subject to judicial construction.

One other contention is made by the plaintiffs in their petition which we believe should be considered. They state that the Attorney General's opinion referred to in our decision is not an official opinion of the Attorney General of the State of North Dakota since it was written by the First Assistant Attorney General and "did not have endorsed thereon the approval of the Attorney General either by initial or otherwise." The plaintiffs contend that an opinion of an Assistant Attorney General is not an official opinion unless the Attorney General himself endorses his approval on such opinion.

This clearly is not the law in North Dakota. Our Constitution provides that the powers and duties of the Attorney General shall be prescribed by law. Sec. 83, N.D. Constitution. By law, the Legislature has authorized the Attorney General to appoint certain assistants. The Attorney General and his assistants are further authorized to institute actions whenever "in their judgment" it is in the best interests of the State to do so. The Attorney General may also "personally or through his assistants" make investigations of any matter properly referred to him. Chap. 54–12, N.D.C.C. The Attorney General is not required to act personally in every matter or to approve all acts of his assistants. The opinion of the First Assistant Attorney General is, in our opinion, the opinion of the Attorney General even though such opinion is not personally signed or initialed by the Attorney General himself.

We adhere to our decision heretofore rendered. The petition for rehearing is denied.

TEIGEN, C. J., C. F. KESLCH, District Judge, and ERICKSTAD and KNUDSON, JJ., concur.