John E. **RILLING,** Administrator of the Estate of Isel Staples, and Ingeborg M. Staples, Plaintiffs and Respondents,

v.

**UNEMPLOYMENT COMPENSATION DIVISION OF the EMPLOYMENT SECURITY BUREAU,** as Administrators of the North Dakota Old Age and Survivors Insurance System, Defendants and Appellants.

No. 8401.

Supreme Court of North Dakota.

June 2, 1967.

Rehearing Denied June 21, 1967.

Helgi Johanneson, Atty. Gen., and Richard Wall, Sp. Asst. Atty. Gen., Bismarck, for appellants.

Vogel, Bair & Graff, Mandan, for respondents.

ERICKSTAD, Judge.

This is in effect an appeal by the Workmen's Compensation Bureau of the State of North Dakota from a judgment of the District Court of Barnes County dated December 21, 1966.

The pertinent part of the judgment reads as follows:

IT IS THEREFORE ADJUDGED AND DECREED:

I

That Isel Staples was a fully insured individual and entitled to benefits under the Old Age Survivor Insurance System, as provided by Section 52–10–01 [52–09–01 et seq.], NDCC, and the Plaintiff, John E. Rilling, as Administrator of the Estate of Isel Staples, recover of the Defendant such benefits, commencing as of January 1, 1964, and ending as of March 2, 1965.

II

The Plaintiff, Ingeborg M. Staples, as wife and widow of Isel Staples, who died a fully insured individual after June 30, 1947, and otherwise qualified to receive benefits, is entitled to a wife's insurance benefit, as provided by Section 52–09–14 B, NDCC, for the period commencing January 1, 1964, and continuing to March 2, 1965, and is further entitled to a widow's insurance benefit under OASIS as provided by Section 52–09–14 D, to commence March 2, 1965, and to continue until she remarries, or dies, or becomes entitled to receive a primary insurance benefit equal to or exceeding three-fourths of the primary insurance benefit of her husband, and that she re-

cover of the Defendant said sums, together with her costs and disbursements taxed and allowed in the sum of Twenty-two and 50/100 ($22.50) Dollars.

On or about January 9, 1964, Mr. Isel Staples filed a claim with the Unemployment Compensation Division of the North Dakota Workmen's Compensation Bureau for old age and survivor insurance benefits. When his claim was denied by the claims deputy on January 31, 1964, he appealed to the Board of Commissioners of the Workmen's Compensation Bureau, which affirmed the deputy's decision. Pursuant to § 52–09–17(G), N.D.C.C., Mr. Staples then sought a review of the decision rendered by the Board of Commissioners by bringing a civil action in the District Court of Barnes County. This action was initiated by complaint dated July 27, 1964.

The Workmen's Compensation Bureau answered by generally denying the material allegations of the complaint.

On March 2, 1965, Mr. Staples died intestate; and on July 13, 1966, letters of administration of his estate were issued to John E. Rilling. By stipulation between the parties, Mr. Rilling as administrator and Mrs. Ingeborg M. Staples, widow of Mr. Isel Staples, were substituted as parties plaintiff, and the complaint was amended accordingly on July 29, 1966, to assert a claim on their behalf.

It is from the judgment of the district court here set forth, reversing the decision of the Bureau, that the Bureau now appeals.

Isel Staples was born January 13, 1892. From September 1933 until the date of the original complaint Mr. Staples was employed as a court reporter of the First Judicial District of the State of North Dakota. While so employed he contributed or paid the employee's tax under the Old Age and Survivor Insurance System, hereafter called OASIS, by having it deducted from his salary. The counties he served contributed or paid the employer's tax.

Pertinent legislative history follows:

On July 1, 1945, Chapter 283 of the 1945 Session Laws became effective to permit the State of North Dakota, all departments and political subdivisions thereof, and all instrumentalities and agencies of any of them, to participate in the old age benefit provisions of the federal Social Security Act. This authorization is now contained in § 52–09–27, N.D.C.C.

On July 1, 1947, Chapter 320 of the 1947 Session Laws became effective. It established our Old Age and Survivor Insurance System.

On July 1, 1955, Chapter 306 of the 1955 Session Laws became effective. It permitted the State to enter into an agreement with the Secretary of Health, Education, and Welfare for the purpose of extending the benefits of the federal old age and survivors insurance system to employees of the State or of any of its political subdivisions. Subsection 7 of that chapter authorized the Governor to authorize a referendum whereby employees of the State and its political subdivisions who were under the provisions of OASIS could decide whether their services should be excluded from or included in an agreement with the aforesaid Secretary.

On December 9, 1955, the initial agreement was entered into between the State of North Dakota and the Secretary of Health, Education and Welfare under § 218 of Title II of the Social Security Act for extension of the insurance system established by Title II of the Social Security Act to services performed by individuals as employees of the State or its subdivisions.

On December 20, 1956, a referendum was held for the employees of the State of North Dakota and its political subdivisions. The vote was in favor of transferring from OASIS to the federal Social Security System.

On March 18, 1957, Chapter 329 of the 1957 Session Laws became effective as an

emergency measure, amending the OASIS law to permit payment from the State Old Age and Survivors' Insurance Trust Fund only under very limited conditions. That chapter is now contained in the Century Code as § 52–09–07. Subdivision 1 of Subsection A thereof provides that no benefits shall be paid from the trust fund except to persons who are receiving benefit payments or are entitled to benefit payments, under § 52–09–14, by virtue of death or retirement occurring before the execution date of the agreement with the Secretary of Health, Education, and Welfare. Notwithstanding the requirement of that amendment, it is contended that Mr. Staples became entitled to OASIS benefits by virtue of having become a fully insured individual under § 52–09–20(F), which entitled him to insurance benefits when he complied with § 52–09–14(A). The latter statute reads as follows:

> Every individual, who (1) is a fully insured individual as defined in section 52–09–20(F) after June 30, 1947, (2) has attained the age of sixty-five, and (3) has filed application for primary insurance benefits, shall be entitled to receive a primary insurance benefit (as defined in section 52–09–20(D)) for each month, beginning with the month in which such individual becomes so entitled to such insurance benefits and ending with the month preceding the month in which he dies.

North Dakota Century Code.

It is admitted that Mr. Staples complied with requirements (2) and (3); the dispute arises over (1)—whether he is a fully insured individual as defined by § 52–09–20(F), which reads as follows:

> The term "fully insured individual" means any individual with respect to whom it appears to the satisfaction of the bureau that:

> (1) He had not less than one quarter of coverage for each of two of the quarters elapsing after July 1, 1947,

> and up to but excluding the quarter in which he retired after he had attained the age of sixty-five, or died, whichever first occurred; or

> (2) He had at least forty quarters of coverage. As used in this subsection, and in subsection (G) of this section, the term quarter and the term "calendar quarter" mean a period of three calendar months ending on March 31, June 30, September 30, or December 31; and the term "quarter of coverage" means a calendar quarter in which the individual has been paid not less than fifty dollars in wages. When the number of quarters specified in paragraph (1) of this subsection is an odd number, for purposes of such paragraph such number shall be reduced by one.
> * * *

North Dakota Century Code.

It is our view that Mr. Staples became a fully insured individual under § 52–09–20 (F) (2) prior to the agreement execution date. With the calendar quarter ending March 31, 1957, Mr. Staples had thirty-nine quarters of coverage. Although the record could have been better established on this point, the Bureau does not deny that Mr. Staples earned or was paid at least $50 during the following three months in his employment by the counties he served as a district court reporter. This establishes his fortieth quarter of coverage. That he earned more than $50 between March 31 and April 23 is obvious. This subdivision does not require an individual to retire to become fully insured.

Having decided that Mr. Staples became a fully insured individual and that he complied with the other provisions of § 52–09–14(A), what is the significance of the fact that he neither retired nor died before the execution date of the agreement with the Secretary of Health, Education, and Welfare?

It should be noted that the law which added this latter requirement became effective before the date Mr. Staples acquired forty quarters of coverage, thus before he became fully insured. That being the case, it is our view that the additional requirement prevails, and that as of the effective date of that amendment, March 18, 1957, Mr. Staples had not acquired a vested right to benefits from the OASIS trust fund.

The next question which arises is whether he complied with § 52–09–20(F) (1) and thereby acquired a vested right to benefit from the OASIS trust fund. It is argued that because Mr. Staples had a quarter of coverage for every calendar quarter that elapsed after July 1, 1947, to January 13, 1957, when he became sixty-five years of age, he thereby became a fully insured individual and thus gained a vested right to benefits from the OASIS trust fund which could not be taken away from him by any subsequent legislation; and that, as the amendment to § 52–09–07(A) 1 did not become effective until March 18, 1957, the amendment was subsequent. The answer to this is that § 52–09–20(F) (1) incorporated from the beginning a requirement that a person must retire to become a "fully insured individual." As Mr. Staples did not retire before the execution date of the agreement with the Secretary of Health, Education, and Welfare, he lost his right to apply to the OASIS trust fund for retirement benefits.

However, he did not lose the right to secure a refund of all that he had contributed to the fund up to the effective date of the agreement. The record shows that he did receive this refund in September 1959.

We draw these conclusions fully cognizant of the references we made in Le Pire v. Workmen's Compensation Bureau, 111 N.W.2d 355 (N.D.1961), to Payne v. Board of Trustees, 76 N.D. 278, 35 N.W.2d 553.

We point out that the statement made in *Le Pire*—that "had he been eligible for retirement at the time he terminated his employment, or at the time of the agreement execution date, April 23, 1957, [presumably without retiring] his rights would have been preserved and the decision in the Payne case would be applicable"—was not necessary to the decision and thus is merely dictum. In reviewing *Payne* we see that the provisions of the Teachers' Insurance and Retirement Fund statutes vary considerably from those of OASIS, and that therefore a decision construing the Teachers' Insurance and Retirement Fund law should not control in this case to the extent that retirement prior to the agreement execution date could be excused when the OASIS statutes specifically require otherwise.

It is our view that under the wording of our OASIS statutes, an employee's right to recover from the OASIS trust fund becomes vested only when he fulfills all of the conditions for payment from the fund.

We note with interest what has been said on this subject by the writers of a 1957 annotation:

With respect to pension statutes requiring (as most modern ones do) all employees to be members of the system and to make contributions thereto, it seems that the rule in the greater number of jurisdictions is that a contributing employee has no vested pension rights either before or after the pension has been granted.

But what would appear to be a growing number of courts have viewed rights in pension systems calling for contributions on a compulsory basis as being nonvested only during the period prior to an employee's fulfilment of the requirements for grant of the pension; upon fulfilment of those conditions, the pensions rights are deemed to vest, thereafter being im-

mune from abolition, if not from adverse change of any kind.

Annot., 52 A.L.R.2d 437, 442 (1957).

Listed among the states holding that pension rights vest upon the fulfillment of the requirements for award of the pension are Georgia, Indiana, Iowa, Kentucky, North Dakota, Ohio, and Wisconsin.

Additional annotation on this subject may be found in 5 A.L.R.2d Later Case Service 203–208 and 1967 pocket part at 31–32.

■ Having concluded that Mr. Staples had no right to recover from the OASIS trust fund, we believe that conclusion prevents, not only the administrator of his estate, but also his widow from recovering from the fund.

■ Section 52–09–14(B) permits the wife of an individual entitled to primary insurance benefits to receive benefits under certain circumstances. A wife does not become entitled to any benefits until such time as her husband qualifies for benefits. Sorlien v. North Dakota Workmen's Compensation Bureau, 84 N.W.2d 575 (N.D. 1957). As Mr. Staples did not qualify for benefits because of his failure to apply for them within the statutory period, his wife did not become entitled to benefits.

■ We construe § 52–09–07(A) 1 to permit a widow to recover benefits from the OASIS trust fund only if her husband was entitled to receive benefits from the trust fund. This we do notwithstanding the language of § 52–09–14(D), which seems to tie the widow's right to benefits to whether her husband was a fully insured individual. As § 52–09–07(A) 1 constitutes the latest expression of the legislature, it must be considered controlling in this case.

The judgment of the trial court is therefore reversed.

TEIGEN, C. J., and KNUDSON, STRUTZ and PAULSON, JJ., concur.