[Filed October 20, 1890.]

C. B. BARTEL, Respondent, *v.* NICHOLAS MATHIAS, Appellant.

CONTRACTS—WHEN SEVERAL.—Where an agreement embraces several distinct subjects which admit of being separately executed and closed, and the facts show that they were so separately performed, and the compensation agreed upon and apportioned to each of them, such an agreement is to be taken severally and a right of action accrued as to each of them when the services were rendered.

STATUTE OF LIMITATIONS—RIGHT OF ACTION.—The statute of limitations begins to run when the right of action is complete, and this being so, a right of action accrued upon each of these matters when the services were rendered and each transaction closed.

PAYMENT—APPROPRIATION.—Where there are several of such distinct claims for services a payment appropriated upon each of them will interrupt the running of the statute of limitations.

FINDINGS—EFFECT OF.—The findings of a referee are conclusive as to the facts found if there is any evidence before him having a tendency to establish such facts.

APPEAL from Multnomah county: E. D. SHATTUCK, judge.

This was an action brought by the plaintiff for services as the general agent of the defendant on an agreement made about the first of April, 1878, to take charge of his property and business, and to act generally as such in the payment of his taxes and insurance, in procuring loans, in leasing and selling and caring for his property, etc.

The complaint alleges that the plaintiff fully complied with all the conditions of said agreement and that he forthwith entered upon such service, and remained in the employment of the defendant until about the first of September, 1883, when, with the consent of the defendant, he left his service and discontinued to labor for him. The complaint is accompanied with an account, containing an itemized bill of said services and payments in detail, which is made a part thereof, etc. The answer puts in issue the material matters alleged, except as to several items. It alleges payment as a defense for all services performed therein, and concludes with the further defense that the right of action as to each and all of said items, etc., did not accrue within six years prior to the commencement of this action, etc.

The reply denies the new matter set up, and alleges affirmatively that the sums paid by the defendant were a part payment of plaintiff's entire claim, and that plaintiff's right of action did accrue within six years prior to the commencement of this action, and denies that they are barred by the statute of limitations, etc.

The issues being thus joined, the cause was by consent referred to a referee to take the testimony, and to determine the issues of fact and the conclusions of law involved. After hearing the testimony and being fully advised in the premises, the referee found:

First—"That in the month of February, 1878, plaintiff and defendant entered into an oral agreement that plaintiff should act as the general agent of defendant, take charge of his property and business, * * * etc.

Second—"That at the time of making such agreement there was no rate of compensation agreed upon between the plaintiff and defendant for such services so to be performed by plaintiff for defendant, and that no time was fixed for the performance or ending of such agency, or for payment for services rendered thereunder.

Third—"That after entering into said agreement, and during said month of February, 1878, plaintiff entered into the service of defendant as his general agent, pursuant to said agreement, and continued in and performed the duties of such agency continuously from February, 1878, to and including February, 1883.

Fourth—"That during the continuance of such agency, plaintiff paid out of his own funds for the benefit of defendant in the management of his property and business the full sum of $384, exclusive of taxes and insurance, prior to November 20, 1882.

Fifth—"That the reasonable value and compensation for plaintiff's services in such agency performed during said term in attending to payment of taxes, insurance and leasing property, time and expenses in traveling and in correspondence with defendant and expenses incident thereto, was and is $283.

Sixth—"That during the term of such agency, at the request of the defendant, plaintiff effected and procured for the defendant three several loans for money, for which it was then agreed that the defendant should pay the plaintiff $100 in each case, and that the sum thereof is $300.

Seventh—"That during the term of such agency, at the request of defendant, plaintiff procured a purchaser for and effected a sale of block 99 in East Portland for defendant, and it was then agreed by them that the plaintiff should have for his services therein $300, and the

defendant gave a note or memorandum thereof in writing to plaintiff for said sum.

Eighth—"That during the term of such agency, at the request of defendant, plaintiff procured a purchaser for blocks 4 and 19 in East Portland at a price and sum for which the defendant desired to sell the same; and that the defendant then agreed to pay plaintiff for his services in procuring such purchaser $600, and defendant gave a note or memorandum in writing to plaintiff for said sum.

Ninth—"That in the month of July or August, 1883, the plaintiff informed the defendant that he had lost the two several notes hereinbefore found to have been given by the defendant to the plaintiff. And it was thereupon agreed between said parties that the amount of money represented by said notes should stand upon the defendant's liability to pay said amount disregarding the evidence of said notes. And thereafter, by the mutual understanding of said parties, said amount of moneys represented by said notes, together with all demands existing between them, stood as an open account between said parties.

Tenth—"That on November 20, 1882, a settlement was made between plaintiff and defendant for all advances of money at and prior to said date made by the plaintiff for the defendant in payment of defendant's taxes and insurance and otherwise.

Eleventh—"That payments have been made on general account hereinbefore found, as shown by findings 4, 5, 6, 7, 8 and 9, at times in the amounts and manner as follows: 1879, paid by defendant, $25; September 6, 1879, paid by J. Paquet for defendant's account, $25; July, paid by defendant in person, $10, thereafter $1; July 17, 1887, paid by defendant in person, $50, and that no other payments have been made.

Twelfth—"That no settlement or accounting has been made between the plaintiff and defendant touching the matters of account involved in this action save as found in finding 10 above.

Thirteenth—"That the balance of said account due and

owing to plaintiff by defendant, after deducting all payments made thereon, is the sum of $1,756; and as conclusions of law, that plaintiff is entitled to recover of and from the defendant $1,756, and to have judgment therefor against the defendant.

(Signed) "JOHN H. WOODWARD, referee."

Upon motion of the defendant to set aside the report and findings of the referee, the cause was tried before the circuit judge, and the said report in all respects confirmed, and a judgment directed to be rendered in favor of the plaintiff for the sum of $1,756 and costs and disbursements, in conformity with the recommendation and finding of the referee.

From this judgment the defendant has brought this appeal to this court.

*A. S. Bennett,* for Defendant.

*A. F. Sears* and *W. W. Thayer,* for Plaintiff.

LORD, J. (after stating the facts), delivered the opinion of the court.

The items of plaintiff's claim for services under his alleged contract extend from the year 1878 to 1883, and as this action was commenced in 1889, unless the payment of $50 found by the referee to have been made in July, 1887, was a part payment of all such indebtedness embraced in such items, it is not disputed that the claim is barred by the statute of limitations. For the plaintiff it was argued that his whole claim was based on an entire contract and that the statute of limitations did not begin to run until the completion of his services under the contract, and that the payment of the $50 at the time alleged was necessarily a part of the entire claim for such services as sued upon and precluded the operation of the statute. On the other hand, the contention was that the facts as found from the evidence show that the claim consists of several distinct and separate items for services which were rendered at different times and in respect to different

subject matters, and that the price to be paid was agreed upon and apportioned to each item when the services were to be performed, and that when so performed were fully complete and ended as to each item, constituting in themselves distinct and independent transactions upon which a right of action then accrued, so that when the $50 was paid, there being several specific debts, unless there was specific reference to or an appropriation upon each of them, the payment was a general payment and would not interrupt the running of the statute. It is no doubt true that there are cases which hold to the effect that where there is a long-continued service performed by one person for another, and no time of payment or term of services being stipulated, and small payments have been made from time to time to apply upon the balance due, the services are deemed to be continuous, and a payment made within six years renews the whole claim for the previous services. In *Smith* v. *Velie*, 60 N. Y. 111, Grover, J., said: "The proof shows that the intestate let the plaintiff have, in every year, various sums of money and different articles of goods, of which he kept an account against her, which was to apply upon her wages. Whenever he did this, her services being continuous and no time fixed by agreement for the payment of any part, the presumption is that it was to apply upon the balance he at that time owed her and not upon the wages of any particular year. Indeed, I think the claim of the plaintiff, at any and all times for previous services, was an entire account and that she could have maintained but a single action thereon against the defendant; that she could not maintain a separate action for each year of services, or any other specified part, after all had been rendered. A payment by the intestate upon the balance due the claimant took the entire balance out of the operation of the statute."

In *Littler* v. *Smiley*, 9 Ind. 117, it was held that upon an account for work and labor done under an agreement for payment without specifying at what time such payment should be made, or how long such labor should be per-

formed, that the statute of limitations would not com-
mence running until such labor was ended.  But in *Davis*
v. *Gorton*, 16 N. Y. 255, 69 Am. Dec. 694, where the services
were performed under a general retainer without any agree-
ment as to the time or measure of compensation, or the term
of employment, it was held to be a general hiring from year
to year, the pay for each year's service becoming due at the
end thereof, so that the statute begun to run on each year's
wages from the end of each year.  See also *Matter of Gara-
ner*, 103 N. Y. 535; 57 Am. Rep. 768; *Mosgrove* v. *Golden*, 101
Pa. St. 605; *Mims* v. *Sturtevant*, 18 Ala. 359.   But the case
at bar differs in essential particulars from those referred
to, and to which our special attention has been asked, and
that the agreement here embraces a number of distinct sub-
jects, all of which admit of and were separately executed and
closed, constituting in themselves several and independent
transactions, and for which the price to be paid for the ser-
vices rendered was agreed upon and apportioned to each of
such subjects.   Such a case is not like a general hiring
for services, as a farm-hand or house-keeper, etc., although
no rate of compensation as wages nor term of employment
is stipulated.

In the nature of things it would be difficult to fix the
time of performance or rate of compensation for services
to be rendered in respect to the various and distinct
subjects embraced in the claim or agreements, and the
facts as found from the evidence show that these subjects
were mainly separately executed and closed, indicating
that they were several and independent transactions.
Take the claims for commissions for the sale of real estate
or for procuring loans.   It is incontrovertible that they
were all severally executed and closed at different times
and for a price agreed upon and apportioned to each
transaction.   The first item in the itemized bill filed by
the plaintiff as part of his complaint is as follows:   ''Feb-
ruary 7, 1879.   To selling block 99 to John Kratz for
$2,600, commissions as per contract, $300."   The facts as
found by the referee show that, at the request of the

defendant, the plaintiff procured a purchaser and effected a sale of that block, and that it was then agreed that the plaintiff should have for his services therein $300, and gave him a note or memorandum in writing for that sum. The same is true for the services rendered in respect to blocks 4 and 19 and for procuring three different loans of money, except as to giving the note, but for which the price was apportioned to each transaction at the time services were performed. These were all subjects embraced within the agreements, but which were separately executed and closed, and the amount to be paid agreed upon and apportioned to each one of them. Such contract is not entire but severable, and a right of action accrued when such services were rendered and ended. It is a familiar principle that the statute of limitations begins to run when the right of action is complete, and this being so a right of action accrued upon each of these matters when the services were rendered and the transaction closed.

The claims being thus several and distinct, the contention for the defendant now is that the payment of the fifty dollars was a general payment and not a payment to be applied in part payment of these several items found by the referee, and consequently did not prevent the running of the statute. But the findings show that the latter part of the year 1882 there was a settlement between the plaintiff and the defendant for all advances of money at and prior to that date made by the plaintiff for the defendant in payment of the defendant's taxes and insurance and otherwise; that subsequently in August of 1883 the plaintiff informed the defendant that he had lost the two several notes given by the defendant to him, and that it was thereupon agreed between them that the amount of money represented by these two notes should stand upon the defendant's liability to pay them without regard to the evidence of said notes, and that thereafter by the mutual understanding of the parties the said amount of moneys represented by said notes, *together with all demands existing between them*, should stand as an open account between the plaintiff and the

defendant. These facts tend to indicate that after the elimination of all matters included in the settlement, there was a mutual understanding reached, not only as to the moneys represented by the notes and the liability therefor, but that there were other existing demands of the plaintiff against the defendant, all of which were to be deemed and treated as an open account. Distinct as they may have been, the claims were recognized as existing, although unsettled. The evidence also tends to show that at the time the fifty dollars was paid by the defendant that he thought that the aggregate of these several items was about twelve hundred dollars, and not so much as the plaintiff claimed, which tends to show that he knew of and recognized the existence of these several claims, and had considered them in the aggregate, only differing as to the gross amount of his indebtedness upon them. This amount as computed by him is much greater than the largest amount in any one item, and exceeds all the others aggregated without it, which tends to indicate at least that when the fifty dollars was paid, that the defendant knew and understood that he was not making a part payment on any specific item, but that he was considering all the claims in the aggregate, and intended it to be applied in part payment of them all, or, in other words, for the whole service performed, represented by these several claims considered in the aggregate. The referee finds that the payments made, including the fifty dollars in July, 1887, were made and to be applied upon these several claims, and specifies them by enumeration "as shown by findings 4, 5, 6, 7, 8 and 9," and finds that the balance due and for which the defendant is entitled to judgment is the sum of $1,756. It is admitted that the findings of the referee are conclusive as to the facts found if there is any evidence before him having a tendency to establish such facts.

Such being the case, it matters not how much we might differ with the referee, if we were permitted to pass upon the facts, his finding is conclusive upon us and we have no other alternative than to affirm the judgment.