Argued January 20; affirmed March 5, 1940

# CRAWFORD *v.* TEACHERS' RETIREMENT FUND ASSOCIATION OF SCHOOL DISTRICT NUMBER 1, MULTNOMAH COUNTY, OREGON

(99 P. (2d) 729)

In Banc.

*Clarence A. Beckman* and *John D. Galey,* both of Portland (Beckman & Galey, of Portland, on the brief), for appellant.

*W. F. Magill* and *John F. Logan,* both of Portland, for respondent.

BELT, J.   The plaintiff, who was a teacher in the public schools of the city of Portland for about 26 years, commenced this mandamus proceeding to compel payment of a certain annuity alleged to have been due her on retirement from the service on February 1, 1938. Plaintiff also demands that $929.32 be paid to her from the teachers' retirement fund as such sum represents the amount credited to her account in excess of that required for her annuity.   The defendant association in substance asserts that plaintiff upon her retirement —alleged by it to have been on October 18, 1938—had not contributed to the fund a sum of money which, with interest, would entitle her to such annuity.   Defendant alleges that plaintiff is not entitled to her annuity until she pays or agrees to pay to the association the sum of $336.88 and that the annuity be dated November 1, 1938, instead of February 1, 1938.

The issue between the plaintiff and the association relative to the amount required for the annuity arose by reason of an amendment of the by-laws on December 13, 1938, increasing the amount required to purchase the annuity.   It is conceded that plaintiff paid

the amount required by what might be designated the old by-laws of the association, but defendant contends that such by-laws were null and void in that they contravened § 35-2707, Oregon Code 1930, to which attention will hereafter be directed. It is also practically conceded that if the by-laws adopted after retirement of the plaintiff are applicable to her she cannot prevail. The material facts relative to this controversy are not in dispute. The decision of the case hinges upon a question of law and not one of fact.

From an order sustaining the writ and directing payment as alleged, the defendant association appeals.

■ The Teachers' Retirement Fund Association was organized and incorporated in 1912, by virtue of chapter 280, Laws of Oregon for 1911. In 1929, the association was reorganized pursuant to chapter 48, Laws of Oregon for 1929. The act creating the retirement fund with various amendments and providing for its maintenance and operation is codified under §§ 35-2701 to 35-2710, inclusive, Oregon Code 1930. The purpose of the act was to create a fund from which annuities were to be paid to teachers who retired after long and faithful service. The legislature, in providing for the creation of this fund, clearly manifested an intention to afford social security to teachers who had devoted their lives to a noble profession. The fund has only two sources: (1) Monthly deductions from teachers' salaries and (2) payment by the school district, in which the association is formed, a certain percentage of taxes received by the district for school purposes, "and such additional sums of money, if any, as may be required to enable said association" to pay certain annuities upon retirement of members of the association (§ 35-2707, Oregon Code 1930).

The act provides for an annuity of $75 per month for the members who retire at 60 years of age or over. The amounts which the district and the members pay into the fund depend upon the various age classifications of the members. Subdivision (c) of § 35-2707, Oregon Code 1930, is applicable in the instant case, as plaintiff had attained the age of 55 years, or over, at the time the association was reorganized in 1929. The above subdivision provides that the school district pay into the fund for every member who had attained such age the sum of $57.50 per month, "*provided said member has contributed to said association a sum which will purchase an annuity of $17.50* per month." The act authorized the adoption of by-laws "for the government of the association." Pursuant to by-laws adopted, a schedule was published and distributed to the teachers by the association, showing the amount required at various ages for the purchase of annuities. Under "Schedule H (Female)" the "purchase price" of an annuity of $17.50 per month at retirement age of 65 years was $2,559.90.

Pursuant to such schedule, the plaintiff commenced in 1912 making monthly payments to the fund and continued to do so until June, 1932, when at such time the contributions by her together with interest credited to her account amounted to $2,803.50, being the sum required to purchase an annuity when a member retired at 60 years of age. Plaintiff, however, did not see fit to retire in June, 1932, but continued to teach until February 1, 1938, when she became 65 years of age and was compelled to retire by reason of the Teachers' Tenure Act enacted in 1935 (Ch. 125, Laws of Oregon 1935).

On October 18, 1938, plaintiff made application to the association for "retirement benefits from the re-

tirement fund, retroactive to February 1, 1938.'' According to the written statement of the treasurer of the association rendered on October 21, 1938, plaintiff's account, as of February 1, 1938, had a total credit of $3,489.22. Since the purchase price of a ''refunding annuity'' at retirement age of 65 years was, according to schedule of the association, $2,559.90, the plaintiff's credits exceeded by $929.32 the purchase price of the annuity. A ''payment voucher'' was drawn in November, 1938, by the clerk of the association in favor of the plaintiff for $929.32, but was never delivered to her, nor was the voucher approved by the chairman of the executive committee and the treasurer.

On December 13, 1938, the by-laws of the association were amended increasing the rates and it was determined, in the light of the experience of the fund, that $3,350 would be required to purchase a ''refunding annuity'' at the retirement age of 66 years. After an adjustment of plaintiff's account, her total credits amounted to only $3,013.12, and an additional payment of $336.88 was therefore required to purchase such annuity. Demand was made upon plaintiff to pay, or promise to pay, to the association such an amount, but she refused to do so.

Under the old by-laws, plaintiff, for many years, was credited with 4 per cent interest on her contributions and in the later years prior to her retirement the rate of interest was changed to 3 per cent. For the ten-year period following 1929, there was a shrinkage of approximately $200,000 in the assets of the association. The funds of the association had not earned the interest anticipated. In fact, instead of earning 4 per cent or 3 per cent, the funds which were loaned or invested during such ten-year period actually earned only 1.8

per cent. In other words, instead of $2,559.90 being required to purchase an annuity of $17.50 per month at retirement age of 65 years, it was found in the light of actuarial experience that it required the sum of $3,350 to purchase such annuity. It was plain that the association had not been operating upon a sound financial basis for many years and it was imperative, if the association were to survive, that some adjustment be made. Hence the amendment of the by-laws.

The decision of this case depends upon whether the by-laws in effect prior to the plaintiff's retirement are to control, or whether the new by-laws changing the rates are applicable. Otherwise stated, it is a question as to whether plaintiff's rights in this retirement fund accrued or became vested at the time of her retirement. Were her contractual relations with the association of such nature that there could be no impairment of her right to an annuity by a change in the by-laws increasing the rates after she ceased to be a member of the association?

■ It is significant that the executive officers of the association were in a quandary as to the effect of the amended by-laws upon teachers who had ceased to be members of the association at the time the change in rates was made. Most of the teachers who had retired after February 1, 1938, and prior to the amendment of the by-laws, were given annuities on the schedule of payments provided in the old by-laws, while other teachers similarly situated acquiesced in the change of the rates and paid according to the new schedule. Counsel for appellant frankly concedes that, if the association is right in its present contentions, a mistake was made in granting annuities according to the old schedules. The association was, no doubt, acting in

good faith, but the state of perplexity which existed relative to the rights of such members to participate in this fund was, indeed, unfortunate. Certainly, if the act making it possible to create a teachers' retirement fund is to effectuate its wholesome and beneficent purpose, there must be some time when the rights of members in the association become fixed and secure. Of course, while a teacher is a member of the association and has not completed payments for an annuity, the association has the inherent power to change its by-laws from time to time in order to provide for the welfare of all concerned. Whether the association may change its by-laws to affect the rights of teachers who are no longer members and who have paid in compliance with the adopted schedule is a different question.

Plaintiff, throughout the years, faithfully complied with the by-laws of the association governing the amount of her monthly payments to the fund. She was informed by the association in 1932 that no further payments would be required to entitle her to an annuity. Indeed, no further demands therefor were made upon the plaintiff until 1938, after she had ceased to be a member of the association.

■■ The internal affairs of the association are governed by its by-laws: 13 American Jurisprudence (Corporations) § 151. We are unable to agree with appellant that the by-laws determining the schedule of payments for annuities are null and void in that they contravene the statute (§ 35-2707, Oregon Code 1930) providing, as applied to plaintiff's case, that a member must contribute "a sum which will purchase an annuity of $17.50 per month." The legislature did not, in such statutory provision, determine the amount necessary to purchase such annuity. That was a matter which could only be

estimated by the association since the amount required would fluctuate with ever-changing economic conditions. It is beyond the limit of human understanding to foretell with mathematical certainty what money will earn in the future. The association, through its by-laws, determined the schedule of payments for annuities.

The association was required by § 35-2707, Oregon Code 1930, to file an annual report with the board of directors, showing:

"* * * a list of its members, both active and those who have been retired on pension, the length of service to the district of each respective member, the schedule of dues paid by its members, the amount of annuity granted to each retired member, the aggregate amount paid to retired members during the fiscal year next preceding the report, an estimate of the amount to be paid during the next succeeding fiscal year, an account of the distribution made of moneys received from the district during the fiscal year preceding the report, and the nature and value of the assets of said association on December 31 next preceding the date for filing said report. * * *"

If such report disclosed that the association had a reserve "lower than the usual reserve computed by the American experience table of mortality and 4 per cent interest", the school district, through its board of directors, was not bound to make its contribution to the fund: § 35-2707, Oregon Code 1930. However, we will pass that phase of the case without further comment, as School District No. 1 is not here complaining. This is a controversy between the association and one of its former members.

Defendant would not challenge the right of plaintiff to recover future monthly instalments if a sufficient

sum had been paid at the time of her retirement to purchase an annuity of $17.50 per month. Defendant practically concedes that, when a teacher makes contributions to the retirement fund, contractual relations are created and, upon full compliance with all the conditions upon her part to be kept and performed, rights become vested upon retirement and cannot be impaired by any subsequent change in the by-laws. In substance, it is the contention of the defendant that plaintiff has not shown performance of her part of the agreement and, until full payment has been made, her rights have not vested.

It may be true that, as now determined by the association, plaintiff did not actually contribute a sufficient sum to the fund to purchase an annuity, but she undoubtedly did contribute such sum as the association, through its by-laws, fixed as sufficient during the time she was a member. Since such by-laws do not infringe upon the statute nor contravene public policy, we think they control and are determinative of her rights. We cannot agree with the defendant that the by-laws by which its internal affairs have been governed for a quarter of a century are null and void.

■■ In our opinion, when, under the plan authorized by the statute, plaintiff voluntarily contributed a substantial part of her salary to this fund, contractual relations with the association were created. Prior to the time of her retirement and the completion of her payments, her rights in the fund were of an inchoate nature and were subject to any changes in the by-laws necessary for the betterment of the association. However, when there had been full performance on the part of the plaintiff, in compliance with the by-laws then governing the association, her rights became vested and no

subsequent change in the by-laws could interfere with or impair such rights. Any other rule would utterly destroy all stability and security in the retirement fund plan under consideration.

■ We do not consider the annuities provided under the teachers' retirement fund plan as in the nature of pensions or bounties which a beneficent sovereignty, at its will, may change or abolish. The teacher, by continuing in the service and making contributions to the fund, has, in effect, accepted the offer of the State, through its governmental agencies, to pay an annuity upon retirement at a certain age. We are not, therefore, dealing with the rights of a public officer in a pension fund, which is always subject to legislative control, but rather with the rights of an employee to the payment of an annuity provided for under the terms of the statute which became a part of the contract. As said in *Ball v. Trustees*, 71 N. J. L. 64, 58 A. 111:

"The annuity is not a pension granted by the state, and no part of it is payable out of state funds. The fund is the result of contributions by the teachers who elect to take part in the scheme, and the rights of the contributors must necessarily depend upon the agreement under which they entered into the scheme."

As we view it, the mere fact that part of the fund might consist of contributions by the school district would not refute the idea of contractual relationship.

While there is great difference of opinion expressed by the courts relative to the question as to whether a teacher under similar retirement fund plans has acquired vested rights (see cases in notes 54 A. L. R. 943; 98 A. L. R. 505; 112 A. L. R. 1009), we think the trend of modern authority and the better-reasoned cases are to the effect that contractual relations are created and

that, upon full performance by the annuitant, rights accrue which cannot be impaired by subsequent legislation: *Trotzier v. McElroy,* 182 Ga. 719, 186 S. E. 817; *State ex rel. Gorczyca v. City of Minneapolis,* 174 Minn. 594, 219 N. W. 924; *McBride v. Retirement Board,* 330 Pa. 402, 199 A. 130; *Retirement Board v. McGovern,* 316 Pa. 161, 174 A. 400; *State ex rel. Stafford v. State Ann. & Inv. Board,* 219 Wis. 31, 261 N. W. 718; *In re Sanborn,* 159 Wash. 112, 292 P. 259; *Ball v. Trustees,* supra. The instant case is not to be confused with those wherein the courts have held that a fireman or police officer has no vested right in a pension fund which the legislature may modify or abolish. There is a sound distinction between a "pension" and an "annuity" although some courts use the terms interchangeably: *Raines v. Board of Trustees,* 365 Ill. 610, 7 N. E. (2d) 489.

■ Counsel for appellant in their brief assert: "The petitioner had become 60 years of age on August 27, 1932, and therefore at that time entitled to retire from the association and receive her retirement annuity." We agree with such conclusion, but are unable to understand why, if she was entitled to the annuity in 1932, she is not entitled to the same in 1938. In what way did she waive rights that had accrued in 1932?

■ Plaintiff retired from the association on February 1, 1938, by operation of law. The mere fact that she applied for her annuity "retroactive as of February 1, 1938" did not change her status. Neither she nor the board of directors had any discretion in the matter relative to time of retirement. Section 20 of the Teachers' Tenure Act (Ch. 125, Laws of Oregon for 1935, codified as §§ 35-2613 to 35-2632, inclusive, Oregon Code Supplement 1935) provides that "On the first day of

February, 1938, teachers who have reached the age of sixty-five (65) years shall be retired by the board * * *." Whatever action the board might take in the matter would be retroactive as of February 1, 1938. As a matter of fact, the defendant so considered that plaintiff had retired on February 1, 1938, and not in October, 1938, as now contended. The minutes of the special meeting of the association held on November 10, 1938, recite: "Miss Crawford, a member of the association who had been retired by the School Board on *February 1, 1938* * * *". (Italics ours). It was also recited in such minutes that, under date of February 1, 1938, "Miss Crawford's credit was $3,489.22, which is $929.32 in excess of the published amount necessary to purchase a refunding annuity of $17.50 class at age of 65 * * *." In the light of this record, can the association now repudiate its official action? The answer is obvious.

It follows that the peremptory writ is sustained and the defendant is directed to grant the relief prayed for in the complaint.

BEAN and ROSSMAN, JJ., not sitting.