Argued June 24, reversed September 21, petition for rehearing
denied October 14, petition for review denied November 16, 1971

ADAMS et al, *Appellants, v.* SCHRUNK et al,
*Respondents.*

488 P2d 831

*Lewis B. Hampton,* Beaverton, argued the cause
for appellants. With him on the brief were Myatt, Bol-
liger, Hampton & Freerksen, Beaverton.

*Ellis E. Gerdes,* Portland, argued the cause for respondents. With him on the brief was Marian C. Rushing, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

FORT, J.

This is a declaratory judgment proceeding brought by Portland police officers against the city and the board of trustees of its fire and police disability and retirement fund. Plaintiffs seek a declaration that their initial temporary service before permament appointment counts for eligibility for retirement and computation of benefits therefor. The trial court held against them and they appeal.

A chronology of the factual situation follows.

In November 1918, Article 2 of the Portland City Charter was adopted establishing policemen's disability and survivorship benefits and a retirement fund. This was funded in part by withholdings from the salaries of both regular and temporary police members. (Original charter amendments, §§ 5-202, 5-204.) A policeman who served as an "active member" of the police bureau for the prescribed time was entitled to monthly pension benefits. The original charter amendments did not define the term "active member."

In February 1941, because the charter retirement and funding plan had proven inadequate, the city council, by Ordinance No. 74921, created additional retirement benefits for regular police officers. This supplemental program was to be funded in part by withholding $5 each month from the salary of any regular police officer who approved the plan.

In March 1942, the council passed Ordinance No. 76947, which provided a system for giving the necessary qualifying physical examinations to temporary officers. The ordinance also provided that temporary officers would have the benefits and make the contributions provided for in Ordinance No. 74921.

In 1943, 1944 and 1945, plaintiffs commenced service as temporary officers. They worked as full-time police officers. The above ordinances and charter were in effect when plaintiffs joined the bureau. One and one-half percent, pursuant to the charter, and $5, pursuant to the ordinances, were withheld from plaintiffs' salaries each month. Thus, during plaintiffs' employment as full-time temporary officers, each made full contributions to the retirement fund in amounts equal in percentage of salary or dollars to the contributions of permanent members.

In 1946 and 1947, plaintiffs, all having served their initial temporary service, were made permanent members and have remained so to date.

The 1918 charter provision continued in force until, by vote of the people in November 1948, it was amended effective July 1, 1949. The new amendment is known as "Fire and Police Disability, Retirement and Death Benefit plan." It superseded both the 1918 charter provision and the ordinances previously adopted as supplementary thereto.

The 1949 charter amendments included the following provision:

"Section 5-126. * * *

"* * * * *'

"7. * * * Time served under temporary appointment before date of permanent appointment shall not be included in computing 'active service' * * *."

The trial court ruled that amendment to the city charter after plaintiffs' permanent appointments reasonably and lawfully withdrew credit for initial temporary service without violation of plaintiffs' constitutional rights. In its memorandum decision, the trial court said that under the original plan time served in a temporary status counted for retirement purposes; by subsequent amendment, however, this temporary service was made irrelevant for retirement purposes. The court found that the new act intended to deny credit for temporary service *before,* as well as after, the effective date of the act.

Historically there has been a conflict in the law relating to pension rights of public employes between the gratuity theory and the vested right theory. Annotation, 52 ALR2d 437, 441 (1957), states:

"Development of the law on the question under annotation has been long and tortuous, reflecting the increasing pressure placed upon the judiciary by the evolution of the now generally accepted theory that pensions are a part of the compensation of an employee to which, under ordinary circumstances, he is as much entitled as he is to the wages paid him for the work he has actually performed. * * *"

*See also,* 3 McQuillin, Municipal Corporations 602, § 12.144 (3d ed rev 1963).

The Oregon Supreme Court in *Crawford v. Teachers' Ret. Fund Ass'n,* 164 Or 77, 99 P2d 729 (1940), in holding that subsequent legislation could *not* impair the pension rights of a teacher in whom the right had already vested, said:

"We do not consider the annuities provided under the teachers' retirement fund plan as in the

nature of pensions or bounties which a beneficent sovereignty, at its will, may change or abolish. The teacher, by continuing in the service and making contributions to the fund, has, in effect, accepted the offer of the State, through its governmental agencies, to pay an annuity upon retirement at a certain age. * * *

"* * * * * *

As we view it, the mere fact that part of the fund might consist of contributions by the school district would not refute the idea of contractual relationship.

"While there is great difference of opinion expressed by the courts relative to the question as to whether a teacher under similar retirement fund plans has acquired vested rights (see cases in notes 54 A.L.R. 943; 98 A.L.R. 505; 112 A.L.R. 1009), we think the trend of modern authority and the better-reasoned cases are to the effect that contractual relations are created and that, upon full performance by the annuitant, rights accrue which cannot be impaired by subsequent legislation. * * *" 164 Or at 87-88.

We think it clear that the gratuity theory was thereby rejected in Oregon.

*Crawford,* however, dealt with a claim of a teacher who had retired on Februry 1, 1938. After that date, because of financial difficulties, the directors of the fund sought to reduce her payments or require her to pay in more money. The court held her rights had vested prior to the action of the association, and thus could not be reduced or otherwise adversely affected. In so holding the court said:

"In our opinion, when, under the plan authorized by the statute, plaintiff voluntarily contributed a substantial part of her salary to this fund, contractual relations with the association were created.

*Prior to the time of her retirement and the completion of her payments, her rights in the fund were of an inchoate nature and were subject to any changes in the by-laws necessary for the betterment of the association.* However, when there had been full performance on the part of the plaintiff, in compliance with the by-laws then governing the association, her rights became vested and no subsequent change in the by-laws could interfere with or impair such rights. Any other rule would utterly destroy all stability and security in the retirement fund plan under consideration." (Emphasis supplied.) 164 Or at 86-87.

In the case at bar, prior to the 1949 amendment plaintiffs had the right, after they had become permanent officers under the 1918 charter and ordinances adopted pursuant thereto, to have the period of time they were employed as temporary officers included in computing the required number of years to enable them to retire. Under *Crawford,* then, the question remains, did the 1949 amendment operate retroactively to cut off that right?

Here plaintiffs, during their service as temporary officers, had withheld from their pay the identical percentage also withheld from the pay of the permanent officers. This was done upon the express understanding that their service and contributions while temporary officers would count toward retirement. The 1949 amendment simply wiped out this part of the employment agreement. No refund of the amounts withheld while temporary officers or other compensating advantage was given plaintiffs. Under these circumstances the cases increasingly recognize a limited vesting of rights under compulsory contribution plans. The Colorado Supreme Court, for example,

said in *Police Board v. Bills,* 148 Colo 383, 390, 366 P2d 581, 584 (1961):

"* * * We now hold that not only prior to their actual retirement, but also prior even to their eligibility to retire, there was a limited vesting in these plaintiffs of their pension rights to the end that although prior to their eligibility to retire the pension plan could be changed, it could not be abolished nor could there be a substantial change of an adverse nature, without a corresponding change of a beneficial nature. An employee's pension rights prior to his eligibility to retire may be modified for the purpose of keeping the pension system flexible to permit adjustments in accord with changing conditions if at the same time the basic integrity of the plan is still maintained. * * *"

*See also, Yeazell v. Copins,* 98 Ariz 109, 402 P2d 541 (1965); *Bellus v. Eureka,* 69 Cal2d 336, 71 Cal Rptr 135, 444 P2d 711 (1968); *Webb v. Whitley,* 114 Ga App 153, 150 SE2d 261 (1966).

In *Harryman v. Roseburg Fire Dist.,* 244 Or 631, 420 P2d 51 (1966), the court considered whether a fireman was entitled to sick pay on termination. At the time he was hired his contract of employment, duly adopted by the directors of the district, provided:

" 'Sick Leave:

" 'One (1) day per month, up to *90* days, Cash On Termination.' " 244 Or at 632.

While he was an employe the following written declaration of policy signed by the chairman and secretary was issued:

" 'If and or when an employe leaves the employment of the district, the employe will remain on the pay roll and receive wages the same as if the employe were on sick leave, and continue until such time all the employe's accumulated sick leave is

used. Such pay will be mailed to the employe each pay period by the pay master and will be classified as Sick Leave Pay.

" 'However the employe shall retain the right to receive all accumulated sick pay in one lump payment.' " 244 Or at 632-33.

Thereafter, and while the fireman was still an employe, the board of directors revoked the "Sick Leave" provision. When the fireman terminated his employment thereafter he sought the 47 days' sick leave which had accumulated. The Supreme Court, in holding that he was entitled to this, said:

"Finally, defendant contends that allowance for sick leave was a gratuity and, therefore, when the board revoked the sick leave provision, whatever rights plaintiff had were terminated. Defendant relies upon *Halek v. City of St. Paul*, 227 Minn 477, 35 NW2d 705 (1949), which holds that sick leave granted to city employees is a mere gratuity creating in the employee a mere expectancy which can be abolished by the city without compensation. We take a different view. *When plaintiff entered upon his employment with defendant he was advised that he would receive an allowance for accumulated sick leave upon termination of employment. He accepted employment upon the assumption that the allowance for sick leave was a part of his compensation for services. Since it was a part of the inducement to accept employment, it can be regarded as a contractual term of plaintiff's employment. Defendant could not, therefore, deprive plaintiff of the allowance after he had earned it.*" (Emphasis supplied.) 244 Or at 634-35.

See also, *State ex rel Nilsen v. Ore. Motor Ass'n*, 248 Or 133, 432 P2d 512 (1967); 34 Op Att'y Gen 942 (1970), and cases cited therein.

We conclude therefore that the city could not by the adoption of the amendment of 1949 cut off the

right of these plaintiffs, who were then and at all times since have been permanent officers, to have included the period of their prior temporary service in computing their eligibility for retirement.

The judgment is reversed.