Petition for review allowed January 30, argued on review
March 5, reversed May 17, 1973

TAYLOR, *Petitioner, v.* MULTNOMAH COUNTY
DEPUTY SHERIFF'S RETIREMENT BOARD
ET AL, *Respondents.*

510 P2d 339

*Graham Walker,* Portland, argued the cause for petitioner. With him on the briefs was Ronald G. Talney, Portland.

*Paul G. Mackey,* Portland, argued the cause for

respondents. On the brief were Desmond D. Connall, Multnomah County District Attorney, and William T. Park, Deputy District Attorney, Portland.

HOLMAN, J.

Plaintiff brought a mandamus proceeding to force defendants, custodians of the Multnomah County Deputy Sheriff's Retirement Board, to include plaintiff in the retirement system for sworn law enforcement personnel of the Department of Public Safety. The trial court granted the writ and defendants appealed to the Court of Appeals. That court reversed the trial court and dismissed the application for the writ. 11 Or App 488, 502 P2d 601 (1972). The Supreme Court granted review.

Plaintiff has been employed since 1956 by the Department of Public Safety or its predecessor, the Multnomah County Sheriff's Office. Her job classification until 1968 was that of Jail Matron, after which time she was reclassified as a Corrections Officer, which position she presently holds. At all times plaintiff has performed her duties under a commission and oath as a deputy sheriff.

On July 10, 1969, the Board of County Commissioners enacted Ordinance No. 25. The ordinance provided:

"An Ordinance providing for a retirement system for deputy sheriffs of Multnomah County.

"Multnomah County ordains as follows:

"A retirement system for sworn law enforcement personnel of Multnomah County is hereby established in accordance with and under the authority of Section 7.50 of Chapter VII, Multnomah

County Home Rule Charter, as prescribed in the following articles:

"ARTICLE I. DEFINITIONS.

"(1) *Sworn law enforcement personnel* as used in this ordinance shall mean such employees of Multnomah County assigned to the Department of Public Safety who perform their duties, *under an oath administered to law enforcement personnel, and who are required to render service as such to the County * * *.*" (Emphasis added.)

Pursuant to Ordinance No. 25 plaintiff demanded admission to coverage under the new retirement plan and the demand was refused by defendants. Plaintiff performed all the acts which were precedent to her right to make contributions and to have contributions made on her behalf by the county if qualification requirements were met. Prior to the enactment of Ordinance No. 25, plaintiff was contributing to an existing retirement plan under Multnomah County Civil Service. Because of the refusal of admission to the new plan she has continued to do so.

Subsequent to plaintiff's application and defendants' refusal to accept her, Ordinance No. 25, after being in effect for nine months, was amended by Ordinance No. 29, which identified sworn law enforcement personnel as employees of the Department of Public Safety within the following job classifications:

(a) Captain
(b) Lieutenant
(c) Sergeant/Detective
(d) Identification Technician
(e) Deputy Sheriff (Patrolman)

Clearly, plaintiff was excluded from participation by the amendment.

■ Defendants first contend that plaintiff performed no services as a law enforcement officer and, therefore, did not qualify under Ordinance No. 25. Defendants assert that ·Black's Law Dictionary, 4th edition, defines a law enforcement officer as one ·"whose duty it is to preserve the peace." We agree with the trial judge in that we are not sure that a jail matron does not "preserve the peace." We also agree with the trial judge that, in any event, the definition in the ordinance controls eligibility under the plan. Those eligible are, "* * * employees of Multnomah County assigned to the Department of Public Safety who perform their duties, under an oath administered to law enforcement personnel, and who are required to render service as such to the county * * *." It seems clear that plaintiff meets the definition. Eligibility was dependent upon the kind of oath that was required as a prerequisite to the performance of the employee's services. It was changed by Ordinance No. 29 to depend upon the particular type of work usually performed. It could be argued that "service as such" refers to service as "law enforcement personnel," rather than to service "under an oath administered to law enforcement personnel," but defendants do not specifically argue this strained construction of the language.

Defendants next contend that:

"the right to participate in a retirement program vests, if at all, only where some form of contract relation exists between the employee and the Pension Board. In the instant case no consideration or reasonable substitute thereof existed to support any contractual relationship as to the benefits of Ordinance No. 25. Therefore, there was no vesting of rights."

Some states continue to advocate the gratuity theory of pensions. Originally, pensions came from the largess of the king and the recipient had no vested interest. An increasing number of courts are abandoning this rationale and are adopting a contract theory which looks upon a pension as part of the employee's promised but delayed compensation for the performance of his job. Today, it can probably be said that the generally accepted theory is that of compensation and that it is possible for an employee to acquire a "vested" right to a pension. *See* annotation, "Vested right of pensioner to pension," 52 ALR 2d, 437; 3 McQuillin, Municipal Corporations, 3rd ed, § 12.144.

■ Oregon has joined the ranks of those rejecting the gratuity theory of pensions and has held that contractual rights to a pension can be created between the employee and the employer. In *Crawford v. Teachers' Ret Fund Ass'n,* 164 Or 77, 99 P2d 729 (1940), we held that a teacher who had already completed the prerequisite duty entitling him to a pension had a vested contractual right thereto which could not thereafter be substantially impaired. In *Adams v. Schrunk,* 6 Or App 580, 488 P2d 831 (1971), (rev. denied November 16, 1971), the Court of Appeals held that Portland police officers acquired a right to have time served as temporary officers included in their periods of service necessary to entitle them to a pension. At the time of the temporary service the then existing pension plan authorized this inclusion in computing the length of service necessary for a pension, and contributions were withheld from the officers' salaries. Subsequently, the plan was amended to deny the inclusion of such service. The Court of Appeals thus recognized, as *Crawford* had not, that a contractual right could be estab-

lished *before the completion* of the service necessary to a pension. We agree with that opinion.

In *Harryman v. Roseburg Fire Dist.,* 244 Or 631, 420 P2d 51 (1966), we held that an employee was entitled to be paid for unused sick leave at the termination of his employment when such payment was authorized at the time he was employed, even though such authorization was subsequently, during his employment, discontinued. We said that the employee had accepted employment upon the assumption that the allowance for unused sick leave was part of the compensation for his services, and that, therefore, the provision was a part of his contract of employment and could not later be denied him by his employer.

■ We conclude from the above authorities that Oregon has adopted not only the contractual concept of pensions, but, also, the concept that contractual rights can arise prior to the completion of the service necessary to a pension. For cases from other jurisdictions, *see Yeazell v. Copins,* 98 Ariz 109, 402 P2d 541, 544-45 (1965); *Weaver v. Evans,* 80 Wash 2d 461, 495 P2d 639, 648-49 (1972); *Backenhus v. City of Seattle,* 48 Wash 2d 695, 296 P2d 536 (1956); *Hanson v. City of Idaho Falls,* 92 Idaho 512, 446 P2d 634, 636-37 (1968); *Kern v. City of Long Beach,* 29 Cal 2d 848, 179 P2d 799 (1947); *Babbit v. Wilson,* 9 Cal App 3d 288, 88 Cal Rptr 623 (1970). Such rights are subject, of course, to subsequent completion of the necessary service.

This brings us to the principal question in this case; that is, whether plaintiff acquired any contractual rights under Ordinance No. 25 prior to its amendment by Ordinance No. 29. Plaintiff did not undertake employment with the county with the ex-

pectation that she would be entitled to the advantages of Ordinance No. 25 because the ordinance was not then in existence. She continued in her employment after having been refused coverage by defendants and, thus, it cannot be said that she continued her employment, at least after such refusal, upon the expectation she would receive the advantageous pension authorized by Ordinance No. 25. Therefore, the usual basis for contractual relations in such cases is lacking in the present case. In addition, defendants argue that plaintiff made no contributions under Ordinance No. 25 which would constitute consideration. The absence of contributions was one of the principal bases for the opinion of the Court of Appeals which stated:

"Unlike the police officers in *Adams*, petitioner's application was never accepted; she paid no money into the new retirement fund and none was deducted from her regular pay."

However, we believe that plaintiff did establish a contractual right to participate in the pension plan. The adoption of the pension plan was an offer for a unilateral contract. Such an offer can be accepted by the tender of part performance. It was stipulated that plaintiff complied with all the prerequisites to coverage under the plan if she came within the definition of sworn law enforcement personnel. Therefore, we must assume that an adequate tender of part performance was made in this case, i.e., that the plaintiff tendered the required contributions from her wages and asked to participate in the plan. Such a tender furnished consideration. Section 45, Restatement of the Law of Contracts, states as follows:

"If an offer for a unilateral contract is made, and part of the consideration requested in the offer is given or tendered by the offeree in response

thereto, the offeror is bound by a contract, the duty of immediate performance of which is conditional on the full consideration being given or tendered within the time stated in the offer, or, if no time is stated therein, within a reasonable time.

"*Comment:*

"\* \* \* \* \*.

"*b*. Tender, however, is sufficient. Though not the equivalent of performance, nevertheless it is obviously unjust to allow so late withdrawal. There can be no actionable duty on the part of the offeror until he has received all that he demanded, or until the condition is excused by his own prevention of performance by refusing a tender; but he may become bound at an earlier day. The main offer includes as a subsidiary promise, necessarily implied, that if part of the requested performance is given, the offeror will not revoke his offer, and that if tender is made it will be accepted. Part performance or tender may thus furnish consideration for the subsidiary promises \* \* \*."

■ The Restatement (Second) of Contracts (Tent. Draft No. 1, 1964) treats Section 45 somewhat differently but with the same result. It reads as follows:

"OPTION CONTRACT CREATED BY PART PERFORMANCE OR TENDER.

"(1) Where an offer invites an offeree to accept by rendering a performance and does not invite a promissory acceptance, an option contract is created when the offeree begins the invited performance or tenders part of it.

"(2) The offeror's duty of performance under any option contract so created is conditional on completion or tender of the invited performance in accordance with the terms of the offer."

An option contract is defined by Section 24A of the Tentative Draft as a promise which meets the requirements for the formation of a contract and limits the

promisor's power to revoke an offer. As applied to the present circumstances, plaintiff's tender of the contributions and acceptance of the plan terminated defendants' power to revoke the offer, and plaintiff would be entitled to the benefits of the plan if she continued to work for the requisite period necessary for retirement.

After all, if plaintiff came within the classification provided by the ordinance (the trial judge, the Court of Appeals and this court all agree that she has), it does not make much sense or meet equitable considerations to allow the defendants to contend that her right to participate under the plan has not "vested" because she has not made contributions or served under the plan, when defendants have prevented plaintiff from doing so by their wrongful refusal of her contributions.

■ Defendants next contend that Ordinance No. 25 reserved the right to defendants to deny the right to participate in the plan to one who, in their judgment, did not come within its terms. The ordinance provided:

> "The Board shall have final authority in determining the eligibility and qualification of county personnel entitled to make contributions and receive benefits under the Retirement System for Sworn Law Enforcement Personnel of Multnomah County."

While the ordinance clearly confers discretionary powers on the defendants, this discretion did not include the power to alter the clear definition of "sworn law enforcement personnel" set out in the ordinance. The defendants would have the power to determine conflicting factual matters concerning eligibility and to construe ambiguous portions of the act, but they cannot alter the clear provisions of the ordinance.

■ Lastly, defendants contend that, assuming a vesting of rights, the passing of Ordinance No. 29 did not substantially damage plaintiff and, therefore, it was within their power to make changes in the plan. They contend that there is a body of law which holds that pension boards have the authority to alter pension plans as long as the alteration does not result in a substantial change of an adverse nature to those covered thereby. They then argue that the taking of plaintiff's rights under Ordinance No. 25, by the passage of Ordinance No. 29, merely returns plaintiff to the pension rights she had under civil service and that this change is not substantially detrimental to her. In our view the body of law relied on by defendants does not support their contention in this case. Ordinance No. 29 substantially damaged plaintiff by completely terminating all of her pension rights under Ordinance No. 25 and did not merely modify them in an insubstantial way. In addition, Ordinance No. 29 did not make a change in the status of all those who were equally eligible for its benefits but, instead, completely eliminated a few from eligibility.

The opinion of the Court of Appeals is set aside and the decision of the trial court is reinstated.