Argued and submitted January 11, reversed and remanded February 13, 1991

Frank R. ALDERSON,
Wayne H. Blair and Richard J. Courson,
*Appellants,*

*v.*

STATE OF OREGON,
Public Employees Retirement System
and State of Oregon Office of the
State Court Administrator,
*Respondents.*

(89C-12016; CA A64487)

806 P2d 142

Lon N. Bryant, Wilsonville, argued the cause and filed the briefs for appellants.

Harrison Latto, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solcitor General, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Plaintiffs are state district court judges. They brought this action for declaratory relief and damages, contending that defendants, the State Court Administrator, the Public Employees Retirement System and administrative officers of those agencies, withheld retirement contributions from plaintiffs' salaries rather than paying the contributions through an employer "pickup," as required by ORS 237.075 and OAR 459-10-208. The conduct allegedly occurred over the period "August 1983 until 1987." Plaintiffs brought the action in October, 1989. Defendants moved to dismiss on the ground that the action is time-barred. The trial court granted the motion. The precise basis for the ruling was not stated, but it appears that the court considered the limitation period to be two years, under either ORS 12.110 or ORS 30.275(8). Plaintiffs appeal from the resulting judgment. We reverse and remand.

■ Although the parties disagree about several issues, the central dispute—and one on which the disposition of some of the other issues turns—is whether the applicable Statute of Limitations is the six-year statute for contracts, ORS 12.080(1), or the two-year statute under the Oregon Tort Claims Act. ORS 30.275(8). The former applies if the gravamen of the action is in contract, and the latter applies if the gravamen is that defendants breached statutory duties. *See Urban Renewal Agency v. Lackey,* 275 Or 35, 549 P2d 657 (1976).[1]

The judicial retirement program is comprehensively defined and regulated by statute. ORS 1.310 to ORS 1.390; ORS ch 237, *passim.* However, the Supreme Court and we have used the word "contractual" to describe employee rights under that and other public pension programs. Plaintiffs contend that the word should be taken literally and that the contract Statute of Limitations should therefore apply.

---

[1] Plaintiffs' complaint contains a grab bag of theories, including due process and, apparently, equal protection. However, we construe its central premise to be that the employer "pickup" requirement was not followed but should have been under the cited statute and rule. Although plaintiffs' pleading refers to a statutory and regulatory violation, and not directly to a breach of contract, the issue is whether the statute and regulation create a contractual right. If so, the statute and the contract overlap, a breach of one also breaches the other, and plaintiffs are not foreclosed from characterizing the gravamen of the action as contractual.

Defendants argue that the statutory nature of their duties and plaintiffs' rights make ORS 30.275(8) applicable. We begin with a detailed examination of the cases on which plaintiffs rely.

The "contract theory" of pension rights was adopted and explained in *Taylor v. Mult. Dep. Sher. Ret. Bd.,* 265 Or 445, 510 P2d 339 (1973):

> "Some states continue to advocate the gratuity theory of pensions. Originally, pensions came from the largess of the king and the recipient had no vested interest. An increasing number of courts are abandoning this rationale and are adopting a contract theory which looks upon a pension as part of the employee's promised but delayed compensation for the performance of his job. Today, it can probably be said that the generally accepted theory is that of compensation and that it is possible for an employee to acquire a 'vested' right to a pension. *See* annotation, 'Vested Right of Pensioner to Pension,' 52 ALR 2d, 437; 3 McQuillin, Municipal Corporations, 3rd ed, § 12.144.

> "Oregon has joined the ranks of those rejecting the gratuity theory of pensions and has held that contractual rights to a pension can be created between the employee and the employer. In *Crawford v. Teachers' Ret Fund Ass'n,* 164 Or 77, 99 P2d 729 (1940), we held that a teacher who had already completed the prerequisite duty entitling him to a pension had a vested contractual right thereto which could not thereafter be substantially impaired. In *Adams v. Schrunk,* 6 Or App 580, 488 P2d 831 (1971), *(rev. denied* November 16, 1971), the Court of Appeals held that Portland police officers acquired a right to have time served as temporary officers included in their periods of service necessary to entitle them to a pension. At the time of the temporary service the then existing pension plan authorized this inclusion in computing the length of service necessary for a pension, and contributions were withheld from the officers' salaries. Subsequently, the plan was amended to deny the inclusion of such service. The Court of Appeals thus recognized, as *Crawford* had not, that a contractual right could be established *before the completion* of the service necessary to a pension. We agree with that opinion.

> "* * * * *

> "We conclude from the above authorities that Oregon has adopted not only the contractual concept of pensions, but, also, the concept that contractual rights can arise prior to the

completion of the service necessary to a pension." 265 Or at 450. (Emphasis in original; some citations omitted.)

In *Taylor*, the right to a pension arose under a county ordinance. However, we applied the contract theory to statutory judicial pension rights in *Gantenbein v. PERB,* 33 Or App 309, 576 P2d 1257, *rev den* 282 Or 537 (1978), where we cited *Taylor* for the proposition that "Oregon follows the rule that retirement benefits become a vested contractual right at the time of acceptance of employment." 33 Or App at 315. We explained, however:

> "Plaintiff acquired vested contractual rights under PERS when he accepted the offer of membership in that plan in 1953—rights which could not have been destroyed by any retirement plan created *after* 1953, had plaintiff remained a member of PERS. Plaintiff presently has vested contractual rights in the Judges' Retirement Fund acquired in 1969 when he accepted the offer of Oregon Laws 1969, ch 332, to become a member of the Fund—rights which cannot be destroyed by a retirement plan created *after* 1969. However, the vested contractual rights acquired by plaintiff by his 1969 membership in the Judges' Retirement Fund do not encompass those rights acquired by previous members of the fund *before* 1969. *Taylor* simply holds that an employe who accepts an initial retirement plan offer has vested contractual rights under the offer which cannot be altered by a second plan put into effect *after* the initial plan has been accepted by the employe—it does not hold that the rights acquired under the second plan operate retroactively to the date of acceptance of the offer of the first plan, as plaintiff contends." 33 Or App at 316. (Emphasis in original.)

Most recently, we said in *Frye v. PERS,* 67 Or App 617, 679 P2d 875, *rev den* 297 Or 339 (1984):

> "The parties agree that, under Oregon case law, statutory retirement systems for public employes are contractual in nature and that they confer 'a vested contractual right at the time of acceptance of employment.' *Gantenbein v. PERB,* 33 Or App 309, 576 P2d 1257, *rev den* 282 Or 537 (1978). However, the parties draw different conclusions from that initial premise. Petitioner argues that, because her rights under the retirement statutes are contractual, she has a property interest in her contributions, and so the controlling statutes should be construed to avoid a forfeiture of that interest. PERS argues that petitioner's contract rights are limited to what the statutes confer, that she has not completed performance of

the conditions the statutes establish as prerequisites to her receipt of benefits and that the statutes do not provide for return of contributions to a judge who has not qualified for benefits.

"Although the fact that statutory pension systems are viewed as contractual is relevant in some contexts, we think that the contract analysis tends to obscure the statutory issue here. The real disagreement between the parties is about what the statutes mean: petitioner contends that, because ORS 1.310 *et seq* does not expressly provide that contributions to the fund will not be returned to former judges who do not qualify for retirement pay or other benefits, the statutes are ambiguous on the point and should be construed against the forfeiture and against the party—the legislature—that drafted them; PERS argues, *inter alia,* that the statues are not rendered ambiguous by the fact that they do not spell out everything they do *not* mean and that their comprehensive description of the payments that can be made from the fund means that any payments the statutes do not specify are precluded. The question is one of first impression, and we agree with PERS's interpretation." 67 Or App at 620. (Emphasis in original; footnote omitted.)

All three cases use the labels "contract," "contract right" and "contract theory" to describe a specie of vested rights, as distinct from a gratuity that a governmental employer might be free to alter unilaterally. Generally, the judicial remedy that is pursued to vindicate a legislatively conferred vested right is not a contract action against the government, but a proceeding to enforce rights under the original legislation or to enjoin the application of new legislation that denigrates the rights. *See, e.g., Polk County v. Martin,* 292 Or 69, 636 P2d 952 (1981); *cf. Tillamook Co. v. State Board of Forestry,* 302 Or 404, 730 P2d 1214 (1986) (courts may not, in guise of enforcing a contract, enjoin legislature from amending statutes). However, under the cited cases and plaintiffs' allegations, the "pickup" provision creates a contract. It follows that its breach can be actionable, *see* ORS 30.320, and that the six-year contract limitation period under ORS 12.080(1) applies.

■ Defendants argue that, even under ORS 12.080(1), the action is untimely, because it was brought more than six

years after the initial breach in August, 1983. Plaintiffs contend that the misconduct was continuing,[2] that each deduction from their salaries was separately actionable and that the statute runs separately for each. Defendants respond that "plaintiffs cannot split up their claim into a series of discrete and actionable wrongs" and that their "claim accrued when the allegedly wrongful conduct first occurred." Defendants rely on *Duyck v. Tualatin Valley Irrigation Dist.*, 304 Or 151, 742 P2d 1176 (1987). However, the question in *Duyck* was not the same. The court held that the Tort Claims Act limitation began to run when the plaintiffs knew or should have known that they suffered *some* harm from the defendant's negligent act and did not begin to run anew when they suffered or learned about different or greater harm resulting from the same act. Even assuming that the *Duyck* rationale carries over to the contract statute, it does not apply to the factually different situation here. Not all of the harm here was caused by the same act; each deduction was a separate breach, as alleged by plaintiffs, and the statute began to run separately as to each alleged breach. *See Martin v. Glenbrook Farms Corp.*, 110 Or 87, 89, 222 P 1102 (1924), *overruled on unrelated grounds, Broyles v. Brown,* 295 Or 795, 671 P2d 94 (1983); *Bartel v. Mathias,* 19 Or 482, 488-89, 24 P 918 (1890). Accordingly, the claims based on the withholdings of contributions that occurred within six years of the bringing of the action are not barred by the limitation.

■    Plaintiffs also argue that their action should be deemed to have accrued on May 2, 1989, when the State Court Administrator refused to reimburse them, rather than on the dates that the contributions were withheld. Defendants answer: "In essence, plaintiffs allege that defendants took their money, but contend that no tort occurred until defendants refused to give it back." Although we do not agree with the tort characterization, we do agree with the thrust of defendants' argument for rejecting plaintiffs' contention. The breaches, if any, were defendants' failures to follow the prescribed contribution requirements, not their refusal to remedy those failures.

---

[2] Plaintiffs use the term "continuing tort," because the argument is aimed in part at the tort Statute of Limitations. We address it as a contract issue, and we imply no answer to the question of whether the same conclusion would follow in the tort context. Defendants' response is also based in some respect on tort concepts.

■ Finally, plaintiffs argue that the statute should be further tolled by ORS 12.220, which provides, as relevant:

"[I]f an action is commenced within the time prescribed therefor and the action is dismissed upon the trial thereof * * * after the time limited for bringing a new action, the plaintiff * * * may commence a new action upon such cause of action within one year after the dismissal * * *."

Plaintiffs base their argument on a federal court action, based on the same events as they allege here, that they brought in July, 1989. The defendants there moved to dismiss because, *inter alia,* the federal court lacked jurisdiction. Plaintiffs agreed and voluntarily dismissed the case. Defendants now argue that ORS 12.220 does not apply if the dismissal of the first action results from a voluntary dismissal before trial. We agree. *Vandermeer v. Pacific Northwest Dev. Corp.,* 284 Or 517, 520, 587 P2d 98 (1978). ORS 12.220 is inapplicable.

Reversed and remanded.